* Note from the Reporter of Decisions: The record indicates that this party signed her name as "Marge R. Humphries." However, the briefs and most of the documents in the record spell her last name as "Humphres."
C. Daniel Rhodes and J.B. Monzella appeal from a summary judgment entered on their claims of intentional interference with business relationships against Collateral Mortgage, Ltd. ("Collateral"), and Marge R. Humphries. We affirm.
Collateral is in the business of lending money to persons who offer mortgages on their real property as security for repayment. In an effort to ensure that particular properties will provide it sufficient security in the event of a foreclosure, Collateral requires that properties tendered as security for a mortgage loan be appraised as to their market value. To that end, Collateral maintains a list of active appraisers it has approved to make such appraisals, and in whose ability to perform accurate appraisals Collateral reposes confidence. Collateral, as is typical of mortgage lenders, requires that any broker originating a mortgage loan select an appraiser from its list of active appraisers as a condition precedent to Collateral's agreeing to fund the loan. The list is maintained by Humphries, the supervisor of Collateral's appraisal department.
In July 1993, Rhodes applied to Collateral to be placed on its approved appraisers list and submitted an application package containing several sample appraisals. Humphries found a series of consistent errors in these appraisals and notified Rhodes that he would be accepted on a five-appraisal "trial" basis. Although Rhodes was aware that his acceptance was provisional and that his appraisals would be closely monitored, Rhodes's appraisals continued to show the same pattern of errors, and in January 1994 Humphries rejected his application to be placed on Collateral's list of approved appraisers.
Monzella applied to Collateral in June 1993 to be placed on its approved appraisers list, and Collateral added Monzella to its approved list one month later. Monzella's appraisals, like Rhodes's, showed various consistent errors when they were reviewed by Collateral; moreover, two officers of Collateral requested that Humphries delete Monzella's name from the approved appraisers list because, they stated, he was not providing prompt final inspections and was not timely returning his report of these inspections to Collateral. For these reasons, Humphries removed Monzella from Collateral's approved appraisers list in March 1995.
Rhodes and Monzella's complaint contends that their removal from Collateral's approved appraisers list constitutes intentional interference with Rhodes and Monzella's business relationships with two mortgage brokers, Allen Mortgage Company ("Allen Mortgage") and Southern Unity Mortgage Company ("Southern Unity"). It is undisputed, however, that on loans not financed by Collateral, Allen Mortgage continues to order appraisals from Rhodes[1] and Southern Unity continues to order appraisals from Monzella.[2] The basis of Rhodes and Monzella's claim is that Collateral's refusal to approve them as appraisers prevents them from appraising any properties tendered as security for loans that are brokered by Allen Mortgage and Southern Unity and financed by Collateral.
Collateral and Humphries moved for a summary judgment based upon the pleadings, several deposition transcripts, and Humphries's affidavit. Collateral and Humphries *Page 68 
also submitted a narrative summary of the undisputed facts and a memorandum of law. Rhodes and Monzella filed a three-page memorandum in opposition. The trial court granted the motion and entered a summary judgment in favor of Collateral and Humphries. Rhodes and Monzella appealed to our supreme court; that court transferred the appeal to this court, pursuant to § 12-2-7(6), Ala. Code 1975.
Rule 56, Ala.R.Civ.P., sets forth a two-tiered standard for determining whether to enter a summary judgment. In order to enter a summary judgment, the trial court must determine: 1) that there is no genuine issue of material fact, and 2) that the moving party is entitled to a judgment as a matter of law. In determining whether a summary judgment was properly entered, the reviewing court must view the evidence in a light most favorable to the nonmovant. Long v. Jefferson County,623 So.2d 1130, 1132 (Ala. 1993). We note that Rule 56 is to be read in conjunction with the "substantial evidence rule" (§ 12-21-12, Ala. Code 1975). Hurst v. Alabama Power Co., 675 So.2d 397, 398
(Ala. 1996). In order to defeat a defendant's properly supported motion for summary judgment, the plaintiff must present "substantial evidence," i.e., "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." Id. (quoting West v. Founders LifeAssurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989)).
On appeal, Rhodes and Monzella make a three-page argument, citing two cases and largely reiterating their contentions originally stated in the memorandum in opposition filed below. Essentially, Rhodes and Monzella claim that the evidence before the trial court presents a prima facie case of intentional interference with their business relations with Allen Mortgage and Southern Unity, and that Humphries and Collateral's interference was not justified as a matter of law.
Our supreme court has stated:
 "The tort of intentional interference with business or contractual relations, to be actionable, requires:
 "(1) The existence of a contract or a business relation;
 "(2) Defendant's knowledge of the contract or business relation;
 "(3) Intentional interference by the defendant with the contract or business relation;
 "(4) Absence of justification for the defendant's interference; and
 "(5) Damage to the plaintiff as a result of defendant's interference."
Chapman v. Kelly, 544 So.2d 160, 161 (Ala. 1989) (footnote omitted; quoting Gross v. Lowder Realty Better Homes Gardens,494 So.2d 590, 597 (Ala. 1986)).[3] In Chapman, an attorney sued, alleging intentional interference with business relations against a bank engaged in lending money for the purchase of property because the bank informed the attorney's current and prospective clientele that any title insurance policies prepared by the attorney were "unacceptable" and that the bank would not recognize them when lending money. The supreme court affirmed a judgment based on a directed verdict in favor of the bank, agreeing that the bank was entitled to a judgment as a matter of law; its reasoning is instructive here:
 "Although [the attorney] may or may not have proved [all elements] of the tort of interference with a contract or business relation, [the bank], as the named insured on the title policies, was justified in making whatever selection of attorney or attorneys it wished to perform title work on property for which it loaned money. [The bank], like anyone else, is entitled to choose with whom it will do business. . . .
 "It is not disputed that when [the bank] lends money for someone to purchase property, [the bank] is the named insured on the title policy issued. This protects the [b]ank against undetected defects in the title. Therefore, it is not only reasonable, but prudent as well, that [the bank] should have the right to select who does its *Page 69 
title work. In fact, it is not uncommon for banks to have lists of approved attorneys whose work they accept with regard to these matters.
 "In the case at hand, [the bank] was attending to its own business of seeing that it had good title to properties it took as security for loans. Therefore, [the bank] can hardly be considered an intermeddler as to the title policies at issue. It follows, then, that because [the bank] was not an intermeddler, its input into whether [the attorney]'s work would be accepted cannot be deemed to be interference with the contract or business relations of another. [The bank] simply exercised its right to select the persons with whom it would maintain a business relationship. Because [the bank] was justified in making its own selection of attorneys to handle its title policies, the trial judge did not err in directing a verdict in this case."
Chapman, 544 So.2d at 161 (citation omitted).
As the bank did in Chapman, Collateral in this case exercised its right to select the persons with whom it chooses to do business. A defect in a purchaser's title to property offered as security could adversely affect a mortgage lender's monetary interests when money is advanced on the strength of that security; similarly, a defect in the appraisal of the value of particular property, if undetected, could cause a mortgage lender to lend amounts of money far in excess of the actual value of the property pledged, or could cause a lender to reject an application for a loan that seems undersecured based on the faulty appraisal.
Rhodes and Monzella argue that Chapman is not pertinent authority because (1) Chapman did not affirm a summary judgment; (2) Collateral, they contend, has no monetary interest in who appraises the property akin to the bank's monetary interest in Chapman; (3) Rhodes is insured for any mistakes he might make; and (4) "most lenders are doing away with the approved appraisers list." We find these arguments unpersuasive. Although Chapman approved a directed verdict under Rule 50, Ala.R.Civ.P., rather than a summary judgment entered under Rule 56, "[b]oth motions . . . call upon the court to make basically the same determination — that there is no genuine issue of fact and that the moving party is entitled to prevail as a matter of law" (10 Charles Alan Wright, Arthur R. Miller and Mary Kay Kane, Federal Practice Procedure, § 2713.1 at 615 n. 10 (2d ed. 1983)), and Chapman is thus authoritative here. Moreover, Rhodes and Monzella fail to note that even if Collateral repackages and sells its loans, Collateral would have an analogous monetary interest in making those loans marketable to prospective purchasers such as loan servicers, who would necessarily look to the security in the event of a default. Also, whether Rhodes or Monzella is insured against liability for misfeasance is wholly irrelevant to Collateral's right preemptively to prevent losses through the selection of approved appraisers. Finally, that other mortgage lenders have ceased to be as selective as Collateral has no bearing upon the justifiability as a matter of law, underChapman, of its maintaining a list of persons from whom it will accept appraisals as a condition of the extension of credit.
We agree with Collateral and Humphries that Chapman is apt authority, and that Rhodes and Monzella's complaint essentially seeks recovery for Collateral's refusal to deal with them. A mere refusal to deal with another does not constitute an intentional interference with business relations under Alabama law. See Bear Creek Enterprises, Inc. v. Warrior GulfNavigation Co., 529 So.2d 959, 961 (Ala. 1988). A contrary holding would effectively require mortgage lenders to deal with any appraiser who wished to be an approved appraiser, regardless of whether he or she was competent or qualified. We conclude that Collateral's conduct is not actionable; thus, we affirm the summary judgment in favor of Collateral.
With respect to the individual claim against Humphries, we note that our supreme court has held that an action cannot be maintained against an officer or an employee of a corporation for intentional interference with business relations unless the officer or employee was acting outside the scope of his or her employment. Perlman v. Shurett, 567 So.2d 1296, 1297
(Ala. 1990). In *Page 70 
support of the motion for summary judgment, Humphries and Collateral submitted evidence tending to show that Humphries's removal of Rhodes and Monzella was within the scope of her authority as supervisor of Collateral's appraisal department, and that they were removed after Humphries had consulted other Collateral personnel. Rhodes and Monzella did not demonstrate that Humphries acted outside the scope of her employment; indeed, they did not dispute Humphries and Collateral's arguments as to this point. Therefore, we affirm the summary judgment as it relates to Humphries. See also Chapman, 544 So.2d at 160-61 (affirming judgment based on directed verdict in favor of bank's agent on intentional interference claim against him personally).
In light of the foregoing facts and authorities, we affirm the summary judgment in favor of Collateral and Humphries.
AFFIRMED.
YATES, MONROE, CRAWLEY, and THOMPSON, JJ., concur.
[1] Rhodes has never had a business relationship with Southern Unity.
[2] Allen Mortgage, for reasons not stated in the record, stopped ordering appraisals from Monzella several months before he was removed from Collateral's approved appraisers list.
[3] The footnote omitted from this quotation from Chapman states that the burden of proving justification is on the defendant. 544 So.2d at 161 n. 1.