PER CURIAM.
 

 Teresa Desselle Thomas sued John A. Williams, seeking an award of damages on claims alleging intentional interference with a business relationship, the tort of outrage, and intentional infliction of emotional distress. Williams moved to dismiss Thomas’s complaint pursuant to Rule 12(b)(6), Ala. R. Civ. P., alleging that Thomas had failed to state a claim upon which relief could be granted. Thomas responded to Williams’s motion to dismiss by arguing that her complaint was sufficient under Rule 8, Ala. R. Civ. P. The trial court heard oral arguments on the motion to dismiss. On December 11, 2007, the trial court entered a notation on the case-action summary in which it granted Williams’s motion to dismiss. Thomas timely appealed.
 

 Our supreme court has set forth the standard of review of a Rule 12(b)(6) dismissal for failure to state a claim upon which relief may be granted as follows:
 

 “ ‘This Court must review de novo the propriety of a dismissal for failure to state a claim and must resolve all doubts in favor of the plaintiff:
 

 “ ‘ “It is a well-established principle of law in this state that a complaint, like all other pleadings, should be liberally construed, Rule 8(f), Ala. R. Civ. P., and that a dismissal for failure to state a claim is properly granted only when it appears beyond a doubt that the plaintiff can prove no set of facts entitling him to relief.
 
 Winn-Dixie Montgomery, Inc. v. Henderson,
 
 371 So.2d 899 (Ala.1979) ....
 

 ‘““Where a 12(b)(6)[, Ala. R. Civ. P.,] motion has been granted and this Court is called upon to review the dismissal of the complaint, we must examine the allegations contained therein and construe them so as to resolve all doubts concerning the suffi
 
 *1236
 
 ciency of the complaint in favor of the plaintiff.
 
 First National Bank v. Gilbert Imported Hardwoods, Inc.,
 
 398 So.2d 258 (Ala.1981). In so doing, this Court does not consider whether the plaintiff will ultimately prevail, only whether he has stated a claim under which he
 
 may
 
 possibly prevail.
 
 Kara-gan v. City of Mobile,
 
 420 So.2d 57 (Ala.1982).”
 

 ‘“Fontenot v. Bramlett,
 
 470 So.2d 669, 671 (Ala.1985).’ ”
 

 Fogarty v. Parker, Poe, Adams & Bernstein, L.L.P.,
 
 961 So.2d 784, 787-88 (Ala.2006) (quoting
 
 Bay Lines, Inc. v. Stoughton Trailers, Inc.,
 
 838 So.2d 1013, 1017-18 (Ala.2002));
 
 see also Stovall v. Universal Constr. Co.,
 
 893 So.2d 1090, 1101-1102 (Ala.2004) (same); and
 
 Pratt Capital, Inc. v. Boyett,
 
 840 So.2d 138, 142-43 (Ala.2002) (same). Our supreme court has recently stated that although we have notice pleading under Alabama’s Rules of Civil Procedure, “ ‘a pleading must give fair notice of the claim against which the defendant is called to defend.’ ”
 
 Ex parte Burr & For-man, LLP,
 
 5 So.3d 557, 566 (Ala.2008) (emphasis omitted), quoting
 
 Archie v. Enterprise Hosp. & Nursing Home,
 
 508 So.2d 693, 696 (Ala.1987);
 
 see also Ex parte International Refining & Mfg. Co.,
 
 972 So.2d 784, 789 (Ala.2007) (“[T]he purpose of notice pleading is to provide defendants adequate notice of the claims against them.”).
 
 [1]
 

 In his motion to dismiss, Williams argued that Thomas’s complaint does not contain allegations sufficient to support her claims asserting the tort of outrage, intentional infliction of emotional distress, and intentional interference with business relations. The factual allegations in Thomas’s complaint read as follows:
 

 “1. The Plaintiff, Teresa Thomas, is an adult resident of Autauga County, Alabama and resides in the town of Mill-brook.
 

 “2. The Defendant, John Williams, is an adult resident of Montgomery County, Alabama and is a practicing medical doctor in Montgomery.
 

 “3. The Plaintiff, Teresa Thomas, was employed as a medical assistant by Dr. James Carpenter from approximately February, 2007, until September 18, 2007, when she was abruptly fired without warning, justification, or explanation.
 

 “4. The Plaintiff, Teresa Thomas, lost her husband, David Brian Thomas, on January 24, 2002, due to the negligent medical care delivered by Defendant, John Williams.
 

 “5. The Plaintiff, Teresa Thomas, as the duly qualified Administratrix of the Estate of her deceased husband, brought a wrongful death lawsuit against Defendant, John Williams, on January 23, 2004.
 

 “6. The wrongful-death and medical-malpractice lawsuit was tried to a jury on or about the week of September 10, 2007.
 

 
 *1237
 
 “7. On September 17, 2007, a Montgomery County jury returned a verdict in favor of Defendant, John Williams.
 

 “8. On the same day, September 17, 2007, Defendant, John Williams, placed a telephone call to Dr. James Carpenter, during business hours, ....
 

 “9. At the time of this initial call, Dr. Carpenter was not available to take [Williams’s] telephone call. [Williams] was given Dr. Carpenter’s cellular phone number instead.
 

 “10. On September 17, 2007, at approximately 3:00 p.m., Defendant, John Williams, again called Dr. Carpenter’s place of business and asked to speak to Dr. Carpenter. On this occasion, Dr. Carpenter was available and took the telephone call in his office.
 

 “11. The next day, on September 18, 2007, at approximately 10:30 a.m., the Plaintiff, Teresa Thomas, received a telephone call from Dr. Carpenter’s office manager who stated that ‘your services are no longer needed anymore.’
 

 “12. At no time was Plaintiff, Teresa Thomas, offered any explanation or justification whatsoever for her abrupt and totally unexpected termination.
 

 “13. [Thomas’s] job performance had been completely acceptable during the course of her employment with Dr. James Carpenter, and no complaints had ever been voiced about her job performance prior to the phone calls made by Defendant, John Williams.
 

 “14. The Plaintiff, Teresa Thomas, inquired as to whether the office manager had received a telephone call regarding her employment. The office manager replied that she had not personally received such a telephone call and declined to talk further about it.
 

 “15. The Plaintiff, Teresa Thomas, went to Dr. Carpenter’s office that afternoon to retrieve her personal belongings.
 

 “16. The Plaintiff, Teresa Thomas, again inquired as to whether John Williams had called the office. Dr. Carpenter’s medical assistant replied that T can’t say Teresa, but believe what you are asking me is true.’
 

 “17. The Plaintiff, Teresa Thomas, further avers that the Defendant, John Williams, intentionally and maliciously made the phone call to her employer, Dr. James Carpenter, with the intent and purpose of seeking, directly or indirectly, the termination of Teresa Thomas’s employment.
 

 “18. [Thomas] also avers that the Defendant, John Williams, knew that she was the sole bread winner for two of her children, and furthermore, that his intentional and malicious phone call was made with intent to financially damage the family, as well as to intentionally inflict mental and emotional distress upon [Thomas].”
 

 Thomas argues that the trial court erred in dismissing her claims against Williams. As an initial matter, we note that Thomas purports to assert separate claims of the tort of outrage and intentional infliction of emotional distress based on the same conduct on the part of Williams; however, the tort of outrage is the same cause of action as intentional infliction of emotional distress.
 
 Harrelson v. R.J.,
 
 882 So.2d 317, 321-22 (Ala.2003);
 
 Gunter v. Huddle,
 
 724 So.2d 544, 547 (Ala.Civ.App.1998). For the purposes of this opinion, we refer to the two claims as a claim of the tort of outrage, and we address the trial court’s dismissal of that claim first.
 

 “The elements of such a claim are settled:
 

 “ ‘The tort of outrage requires that: (1) the actor intended to inflict emotional
 
 *1238
 
 distress, or knew or should have known that emotional distress was likely to result from his conduct; (2) the conduct was extreme and outrageous; (3) the defendant’s actions caused the plaintiff distress; and (4) ... the distress was severe. With respect to the conduct element, this Court has stated that the conduct must be “so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society.” ’ ”
 

 Gunter v. Huddle,
 
 724 So.2d at 547 (quoting
 
 Harris v. McDavid,
 
 553 So.2d 567, 569-70 (Ala.1989));
 
 see also American Road Sen. Co. v. Inmon,
 
 394 So.2d 361, 365 (Ala.1980) (recognizing the tort of outrage as actionable in Alabama).
 

 In
 
 American Road Service Co. v. In-mon,
 
 supra, Inmon lost his job after his employer conducted an investigation of an alleged “kick-back” scheme and an audit of Inmon’s job performance. Inmon presented evidence indicating that he “had been harassed, investigated without cause, humiliated, accused of improper dealings, treated uncustomarily, and terminated without justification.” 394 So.2d at 367. However, our supreme court, although recognizing that a cause of action existed for the tort of outrage, concluded that the evidence presented in that case was insufficient to support a tort-of-outrage claim. In reaching that conclusion, the court acknowledged that “the record supports the conclusion that the management of In-mon’s investigation and termination may have been somewhat disorganized, and a humiliating experience for him personally.” 394 So.2d at 368. However, the court held that the employer’s conduct could not be characterized as “ ‘so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.’ ”
 
 Id.
 
 (quoting
 
 Restatement (Second) of Torts,
 
 § 46, Comment (d), p. 73 (1948)).
 

 In
 
 Potts v. Hayes,
 
 771 So.2d 462, 465 (Ala.2000), Hayes, a nurse, sued her supervisor after the supervisor sent a letter to the Alabama Board of Nursing documenting concerns he had about Hayes’s regularly seeking narcotics for migraines; her receiving narcotics without a doctor’s order; and her checking out narcotics as apart of her job, but doing so without proper documentation. Hayes alleged, among other things, that the supervisor’s conduct amounted to an intentional infliction of emotional distress, i.e., that it support a tort-of-outrage claim, because, she stated, he had publicly accused her of “ ‘being a drug addict, a thief, a danger to the public and of failing to perform her duties’ ” as a nurse. 771 So.2d at 464. Our supreme court held that the evidence was insufficient to submit to a jury on a tort-of-outrage claim and that the trial court erred in failing to enter a judgment as a matter of law on Hayes’s tort-of-outrage claim. In so holding, the court recognized:
 

 “The tort of outrage is an extremely limited cause of action. It is so limited that this Court has recognized it in regard to only three kinds of conduct: (1) wrongful conduct in the family-burial context,
 
 Whitt v. Hulsey,
 
 519 So.2d 901 (Ala.1987); (2) barbaric methods employed to coerce an insurance settlement,
 
 National Sec. Fire & Cas. Co. v. Bowen,
 
 447 So.2d 133 (Ala.1983); and (3) egregious sexual harassment,
 
 Busby v. Truswal Sys. Corp.,
 
 551 So.2d 322 (Ala. 1989). See also Michael L. Roberts and Gregory S. Cusimano,
 
 Alabama Tori Law,
 
 § 23.0 (2d ed. 1996). In order to recover, a plaintiff must demonstrate that the defendant’s conduct ‘(1) was intentional or reckless; (2) was extreme and outrageous; and (3) caused emotion
 
 *1239
 
 al distress so severe that no reasonable person could be expected to endure it.’
 
 Green Tree Acceptance, Inc. v. Stand-ridge,
 
 565 So.2d 38, 44 (Ala.1990) (citing
 
 American Road Service Co. v. Inmon
 
 [, 394 So.2d 361 (Ala.1980) ]).”
 

 Potts v. Hayes,
 
 771 So.2d at 465.
 

 Since the release of
 
 Potts v. Hayes,
 
 supra, our supreme court has affirmed judgments on jury verdicts entered on a tort-of-outrage claim in two other cases— one involved a sexual assault on a minor and the other could be said to have involved “barbaric methods employed to coerce an insurance settlement.”
 
 See Potts v. Hayes,
 
 771 So.2d at 465. In
 
 Harrelson v. R.J.,
 
 supra, our supreme court held that the defendant’s sexual assault of a 15-year-old girl and the girl’s resulting emotional distress was sufficient to support a judgment on a jury verdict against the defendant on a tort-of-outrage claim. In that case, our supreme court concluded that the evidence supported a conclusion that the defendant’s conduct had caused the victim emotional distress “so severe that no reasonable person could be expected to endure it.”
 
 Harrel-son v. R.J.,
 
 882 So.2d at 323. In
 
 Travelers Indemnity Co. of Illinois v. Griner,
 
 809 So.2d 808, 811-12 (Ala.2001), two defendant workers’ compensation administrators, although contractually obligated to provide medical benefits, withheld those benefits without justification, causing the plaintiff to “remain[ ] depressed and in pain for an extended period without the medical necessities prescribed by his authorized physicians.” As a result, the administrators’ conduct created the possibility of the plaintiffs being forced to accept a minimal workers’ compensation settlement. Our supreme court concluded that that evidence supported the plaintiffs tort-of-outrage claim, and it affirmed a judgment entered on a jury verdict in favor of the plaintiff.
 
 Id.
 

 In
 
 Collins v. Henderson,
 
 480 So.2d 1246 (Ala.Civ.App.1985), Henderson, a contractor, sued Collins, a homeowner, after Collins had failed to pay him for certain repairs. Collins counterclaimed, alleging that the contractor had “(1) caused tar damage to her home and household furnishings, (2) caused the walls in her home to crack, (3) caused her house to leak, resulting in water damage to her home and household furnishings, and (4) cut a power cable outside the home and then improperly repaired the cable, causing balls of electricity to fly through her home.” 480 So.2d at 1248. Collins asserted, among other claims, a tort-of-outrage claim. The trial court dismissed the tort-of-outrage claim, and this court affirmed, concluding that Collins had failed to assert a claim upon which relief could be granted. This court explained:
 

 “The allegations in the counterclaim and upon which Collins based her claim of outrage relate to breach of contract and negligent performance of the contract and, therefore,
 
 do not rise to that level of ‘extreme and outrageous conduct’ required by our cases
 
 and the
 
 Restatement (Second) of Torts, supra.
 
 Consequently, Collins’s tort of outrage count does not state a claim for which relief can be granted. Hence, the trial court did not commit reversible error by dismissing [Collins’s tort-of-outrage claim].”
 

 Collins v. Henderson,
 
 480 So.2d at 1248 (emphasis added).
 

 In this case, in addition to her factual allegations quoted above, in asserting her tort-of-outrage claim, Thomas alleged:
 

 “Defendant, John Williams, as referenced herein, engaged in irreprehensible [sic] conduct in contacting Dr. Carpenter and in intentionally and maliciously interfering in the business relationship be
 
 *1240
 
 tween Dr. Carpenter and [Thomas]. As such, [Williams’s] conduct was so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society.
 

 “By virtue of [Williams’s] conduct, Plaintiff, Teresa Thomas, has sustained damages and suffered losses, including being subjected to severe emotional distress.”
 

 Thus, the allegations in Thomas’s complaint allege that Williams contacted her employer and that, shortly thereafter, her employer terminated her employment. Although Thomas alleges that Williams intended to cause the termination of her employment, she did not allege that Williams actually caused the loss of her employment. This court must construe the complaint in a manner in which all doubts regarding the sufficiency of the pleadings are resolved in favor of Thomas.
 
 Fogarty v. Parker, Poe, Adams & Bernstein, L.L.P.,
 
 supra. Accordingly, we construe the complaint as alleging that Williams improperly
 
 caused
 
 the termination of Thomas’s employment. We further conclude that Thomas’s cursory statement that she was “subjected to severe emotional distress” was sufficient to survive a motion to dismiss. Therefore, we conclude that, in her complaint, Thomas set forth allegations in support of each of the required elements of the tort of outrage.
 

 However, in addition to requiring “a short and plain statement of the claim,” Rule 8(a), Ala. R. Civ. P., also requires that “the pleader [show that she] is entitled to relief’ on that claim. Even if all the allegations Thomas cited in support of her tort-of-outrage claim are taken as true, we must conclude that the facts of this case are insufficient to rise to the level necessary to support a tort-of-outrage claim. In essence, Thomas has alleged that Williams caused her to lose her job. Assuming Thomas’s allegations to be true and capable of being supported by the evidence, we cannot say that Williams’s conduct rose to the level at which our courts have allowed recovery for the tort of outrage, i.e., cases involving misconduct in a burial, sexual harassment or assault, or barbaric methods of coercing an insurance settlement.
 
 See Potts v. Hayes,
 
 supra;
 
 see also Harrelson v. R.J.,
 
 supra; and
 
 Travelers Indemnity Co. of Illinois v. Griner,
 
 supra. We cannot say that Williams’s conduct, as alleged in Thomas’s complaint, was “ ‘so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.’ ”
 
 American Road Serv. Co. v. Inmon,
 
 394 So.2d at 368. Accordingly, we agree with Williams that, with regard to Thomas’s tort-of-outrage claim, Thomas failed to state a claim upon which relief could be granted, and we affirm the trial court’s dismissal of that claim.
 
 Collins v. Henderson,
 
 supra.
 

 Thomas next argues that the trial court erred in dismissing her claim asserting intentional interference with business relations.
 
 [2]
 
 Our supreme court has stated:
 

 “The elements of the tort of interference with contractual or business relations are: 1) the existence of a contract or business relation; 2) the defendant’s knowledge of the contract or business relation; 3) intentional interference by
 
 *1241
 
 the defendant with the contract or business relation; 4) the absence of justification for the defendant’s interference; and 5) damage to the plaintiff as a result of the interference.’
 
 Soap Co. v. Ecolab, Inc.,
 
 646 So.2d 1366, 1371 (AJa.1994). ‘The general rule firmly meshed into the law of most jurisdictions today is that one who, without justification to do so,
 
 induces
 
 a third person not to perform a contract with another, is liable to the other for the harm caused thereby.’
 
 Gross v. Loivder Realty Better Homes & Gardens,
 
 494 So.2d 590, 596 (Ala.l986)(emphasis added).”
 

 Ex parte Aivtrey Realty Co.,
 
 827 So.2d 104, 108-09 (Ala.2001);
 
 see also Soap Co. v. Ecolab, Inc.,
 
 646 So.2d 1366, 1371 (Ala.1994) (same).
 

 In his motion to dismiss, Williams, citing
 
 Barber v. Business Products Center, Inc.,
 
 677 So.2d 223, 227 (Ala.1996), contends that Thomas was also required to allege “fraud, force, or coercion” on the part of Williams in support of her claim alleging intentional interference with business relations.
 
 See also Joe Cooper & Associates, Inc. v. Central Life Assurance Co.,
 
 614 So.2d 982 (Ala.1992), upon which
 
 Barber
 
 relies for that proposition. In setting forth the elements of the cause of action of intentional interference with business relations, and including the element of “fraud, force, or coercion,” both
 
 Barber
 
 and
 
 Joe Cooper & Associates,
 
 supra, omit the “absence of justification” element set forth in
 
 Awtrey Realty,
 
 supra.
 

 The contradiction in the stated elements of intentional interference with business relations leads us to more closely examine the cause of action. In
 
 Gross v. Lovcder Realty Better Homes & Gardens,
 
 494 So.2d 590 (Ala.1986), our supreme court set forth the history of the cause of action of intentional interference with business relations, explaining that it was first recognized in
 
 Sparks v. McCreary,
 
 156 Ala. 382, 47 So. 332 (1908), as an intentional interference that resulted in harm to the plaintiffs business. 494 So.2d at 593. The cause of action was later narrowed in
 
 Ers-well v. Ford,,
 
 208 Ala. 101, 94 So. 67 (1922), to provide that it could be asserted in only two instances: when an employee is enticed to leave his employment or “ ‘where a party has been procured against his will or contrary to his purpose, by coercion or fraud, to break his contract with another.’ ”
 
 Gross,
 
 494 So.2d at 594-95 (quoting
 
 Erswell v. Ford,
 
 208 Ala. at 103, 94 So. at 69). The court then discussed the similarity of the torts of intentional interference with business relations and intentional interference with contractual relations, and it ultimately concluded that there was no reason to maintain a distinction between the two causes of action. The court explained:
 

 “[M]any jurisdictions have established a cause of action broad enough to include not only interference with contractual relations, but also interference with business relations not necessarily involving a contract.
 
 See
 
 45 Am.Jur.2d
 
 Interference
 
 §§ 49-50 (1969); Annot., 5 A.L.R.4th 9 (1981). Adoption of this broad scope of the cause of action has been recognized as the better approach in those jurisdictions, such as ours, in which an action for interference with business relations is allowed. We see no reason to continue the distinction between the two causes of action and are of the opinion that a single set of elements, broadly defined, so as to include both causes of action, would simplify and clarify the law in this area.”
 

 Gross,
 
 494 So.2d at 596-97. Accordingly, the court set forth the elements for the newly combined, broader cause of action of intentional interference with business or contractual relations as requiring:
 

 
 *1242
 
 “(1) The existence of a contract or business relation;
 

 “(2) Defendant’s knowledge of the contract or business relation;
 

 “(3) Intentional interference by the defendant with the contract or business relation;
 

 “(4) Absence of justification for the defendant’s interference;
 
 [3]
 
 and
 

 “(5) Damage to the plaintiff as a result of defendant’s interference.
 

 " 3We retain the principle that justification is an affirmative defense to be pleaded and proved by the defendant. Whether the defendant is justified in his interference is generally a question to be resolved by the trier of fact.
 
 Polytec, Inc. v. Utah Foam Products, Inc.,
 
 439 So.2d 683 (Ala.1983). Whether a defendant’s interference is justified depends upon a balancing of the importance of the objective of the interference against the importance of the interest interfered with, taking into account the surrounding circumstances.
 
 Restatement (Second) of Torts
 
 § 767 (1979), and Comments. The restatement utilizes the term 'improper' to describe actionable conduct by a defendant. Non-justification is synonymous with ‘improper.’ If a defendant’s interference is unjustified under the circumstances of the case, it is improper. The converse is also true. Section 767 of the
 
 Restatement
 
 lists, and the Comments explain, several items that we consider to be among the important factors to consider in determining whether a defendant's interference is justified:
 

 “ ‘(a) the nature of the actor’s conduct,
 

 “ ‘(b) the actor’s motive,
 

 “ ‘(c) the interests of the other with which the actor’s conduct interferes,
 

 “ ‘(d) the interests sought to be advanced by the actor,
 

 “ ‘(e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other,
 

 “‘(f) the proximity or remoteness of the actor’s conduct to the interference, and
 

 “ ‘(g) the relations between the parties.’
 

 “Restatement (Second) of Torts
 
 § 767 (1979).”
 

 Gross,
 
 494 So.2d at 597 (footnote omitted). Thus, the elements of the cause of action as set forth in
 
 Awtrey Realty,
 
 supra, are the same as those first set forth by our supreme court in
 
 Gross
 
 when it created the broader cause of action of intentional interference with business or contractual relations.
 

 Barber
 
 and
 
 Joe Cooper & Associates
 
 are the only cases decided by our supreme court since
 
 Gross
 
 that mention the requirement of “fraud, force, or coercion” as an element of the tort of intentional interference with business or contractual relations.
 
 [3]
 
 Most cases dealing with a claim of intentional interference with business relations since the decisions in
 
 Barber,
 
 supra, and
 
 Joe Cooper & Associates,
 
 supra, have relied upon the “absence of justification” element rather than the requirement of a showing of “fraud, force, or coercion.”
 
 See, e.g., Tom’s Foods, Inc. v. Cam,
 
 896 So.2d 443, 453-54 (Ala.2004);
 
 Waddell
 
 &
 
 Reed, Inc. v. United Investors Life Ins. Co.,
 
 875 So.2d 1143, 1153 (Ala.2003);
 
 Michelin Tire Corp. v. Goff,
 
 864 So.2d 1068, 1077 (Ala.Civ.App.2002);
 
 Parsons v. Aaron, 849
 
 So.2d 932, 946 (Ala.2002);
 
 Colonial Bank v. Patterson,
 
 788 So.2d 134, 136-37 (Ala.2000);
 
 Folmar & Assocs., LLP v. Holberg,
 
 776 So.2d 112, 115 (Ala.2000);
 
 Sevier Ins. Agency, Inc. v. Willis Corroon Corp. of Birmingham,
 
 711 So.2d 995, 1001
 
 *1243
 
 (AIa.1998),
 
 rev’d on other grounds, Ex parte Howell Eng’g & Surveying, Inc.,
 
 981 So.2d 413 (Ala.2006); and
 
 Rhodes v. Collateral Mortgage, Ltd.,
 
 695 So.2d 66, 68 (Ala.Civ.App.1997). Other recent cases have omitted the “absence of justification” element but have failed to mention a requirement of “fraud, force, or coercion.”
 
 See, e.g., S.B. v. Saint James Sch.,
 
 959 So.2d 72, 94 (Ala.2006);
 
 McCluney v. Zap Profl Photography, Inc.,
 
 663 So.2d 922, 925 (Ala.1995);
 
 Utah Foam Prods., Inc. y. Polytec, Inc.,
 
 584 So.2d 1345, 1352-53 (Ala. 1991); and
 
 Cobb v. Union Camp Corp.,
 
 786 So.2d 501, 506 (Ala.Civ.App.2000),
 
 rev’d on other grounds, Ex parte Union Camp Corp.,
 
 816 So.2d 1039 (Ala.2001).
 

 Thus, this court’s research has revealed no cases decided since
 
 Barber
 
 and
 
 Joe Cooper & Associates
 
 that require an allegation or proof of “fraud, force, or coercion” on the part of the defendant in order to allege a claim of intentional interference with business relations. The supreme court indicated in
 
 Gross,
 
 supra, that it intended to replace the old cause of action of intentional interference with business relations, a part of which included the “fraud, force, or coercion” language, with the broader cause of action of interference with business or contractual relations. In doing so, the court set forth elements for that cause of action that did not include “fraud, force, or coercion” on the part of the defendant.
 
 See Gross,
 
 supra. In setting forth the elements of the cause of action, the supreme court also included a footnote, quoted supra, in which it explained the required element of “absence of justification.”
 
 Gross,
 
 494 So.2d at 597.
 

 More recent authority than
 
 Barber
 
 and
 
 Joe Cooper & Associates
 
 has required an “absence of justification” for the purported interference, rather than “fraud, force, or coercion.” Also, a requirement that a plaintiff claiming intentional interference with contractual relations allege and show an “absence of justification” does not conflict with our supreme court’s opinion in
 
 Gross,
 
 supra. Accordingly, we elect to follow the line of cases setting forth the elements of an intentional interference with business relations as
 

 “ ‘1) the existence of a contract or business relation; 2) the defendant’s knowledge of the contract or business relation; 3) intentional interference by the defendant with the contract or business relation; 4) the absence of justification for the defendant’s interference; and 5) damage to the plaintiff as a result of the interference.’ ”
 

 Ex parte Awtrey Realty Co.,
 
 827 So.2d at 108-09 (quoting
 
 Soap Co. v. Ecolab, Inc.,
 
 646 So.2d at 1371);
 
 see also Tom’s Foods, Inc. v. Carn,
 
 supra;
 
 Waddell & Reed, Inc. v. United Investors Life Ins. Co.,
 
 supra;
 
 Michelin Tire Corp. v. Goff,
 
 supra;
 
 Parsons v. Aaron,
 
 supra;
 
 Colonial Bank v. Patterson,
 
 supra;
 
 Folmar & Assocs., LLP v. Holberg,
 
 supra;
 
 Sevier Ins. Agency, Inc. v. Willis Corroon Corp. of Birmingham,
 
 supra; and
 
 Rhodes v. Collateral Mortgage, Ltd.,
 
 supra.
 

 In this case, Thomas alleged that Williams had called the man he knew to be Thomas’s employer and that, shortly thereafter, Thomas lost her employment. Thomas asserted facts tending to indicate that Williams’s contact with her employer constituted interference with her employment relationship with her employer, and she stated that the purported interference was not justified. Thus, we conclude that Thomas alleged facts sufficient to assert a valid claim of intentional interference with business or contractual relations. We note that the absence of justification for the interference is an element that, in addition to being alleged and proven by plaintiff, is also an affirmative defense available to the defendant. Gross, 494 So.2d at 597 n. 3.;
 
 *1244
 

 see also Tom’s Foods, Inc. v. Carn,
 
 896 So.2d at 454-55; and
 
 Parsons v. Aaron,
 
 849 So.2d at 946. In his brief submitted to this court, Williams has argued facts that he contends constitute a justification for his purported interference. However, those arguments have not, at this stage of the litigation, been presented to or considered by the trial court.
 

 In reaching our holding, we do not consider whether Thomas will actually prevail on her intentional-interference-with-business-relations claim,
 
 see Fogarty v. Parker, Poe, Adams & Bernstein, L.L.P.,
 
 supra. We merely conclude that the facts as alleged in that complaint, when construed in Thomas’s favor, are sufficient to state a claim of intentional interference with business relations such that relief might be granted on that claim and are sufficient to give Williams “fair notice” of that claim.
 
 See
 
 Rule 8(a), Ala. R. Civ. P.; and
 
 Gross v. Lowder Realty Better Homes & Gardens,
 
 supra;
 
 see also Ex parte Burr Forman, LLP,
 
 supra. We conclude that the trial court erred in dismissing that part of Thomas’s complaint in which she asserted a claim of intentional interference with business relations. Accordingly, we reverse that part of its judgment, and we remand the cause for further proceedings.
 

 AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
 

 THOMPSON, P.J., and PITTMAN, BRYAN, and THOMAS, JJ„ concur.
 

 MOORE, J., concurs in the result, without writing.
 

 [1]
 

 . We note that in his brief submitted to this court, Williams argues that the United States Supreme Court has set forth a more stringent standard for stating a claim in a complaint,
 
 see Bell Atlantic Corp. v. Twombly,
 
 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and that this court should apply that standard. The Supreme Court of Alabama has the sole authority to promulgate rules governing practice and procedure in all Alabama courts. Ala. Const, of 1901, Amend. No. 328, § 6.11 (now Art. VI, § 150, Ala. Const. 1901 (Off. Recomp.));
 
 Ex parte Sorsby,
 
 12 So.3d 139 (Ala.2007). Also, this court is bound by the precedent of our supreme court, and, therefore, we are unable to overrule prior caselaw in order to alter a well-settled standard of review. § 12-3-16, Ala.Code 1975;
 
 Farmers Ins. Exch. v. Raine,
 
 905 So.2d 832, 835 (Ala.Civ.App.2004). Accordingly, we use the well-settled standard of review of a motion to dismiss.
 

 [2]
 

 . A person's employment is a property right, and interference with that right may be actionable under the theory of intentional interference with business or contractual relations.
 
 Hall v. Integon Life Ins. Co.,
 
 454 So.2d 1338, 1344 (Ala. 1984).
 

 [3]
 

 . In
 
 Pakruda v. Cross,
 
 669 So.2d 907, 909 (Ala.Civ.App. 1995), this court, citing
 
 Joe Cooper & Associates,
 
 also stated that "fraud, force, or coercion” was a required element of the tort of intentional interference with business or contractual relations.