THOMPSON, Presiding Judge.
 

 K-Mart, Inc. (“K-Mart”), and Certegy Check Services, Inc. (“Certegy”), appeal from the judgment of the St. Clair Circuit Court awarding James T. Stewart and Jane Stewart $15,000 in damages following a bench trial. For the reasons stated herein, we reverse that judgment.
 

 Certegy provides a service to merchants with regard to their acceptance of checks drawn on customers’ bank accounts. Simply described, when a purchaser presents a check to a merchant that subscribes to Certegy’s service, Certegy will recommend to the merchant, based on the information it has about the purchase!’, whether or not to accept the purchaser’s check. If Certe-gy recommends to the merchant that it accept the check and the cheek is later returned unpaid by the purchaser’s bank, Certegy pays the amount of the check to the merchant and then proceeds against the purchaser for recovery of the amount owed. K-Mart is a nationwide retailer that subscribes to Certegy’s service. James T. Stewart and Jane Stewart (collectively, “the Stewarts,” or, individually, “Mr. Stewart” and “Mrs. Stewart”), are husband and wife. At the times pertinent to this action, they had a joint checking account at Metro Bank (“the bank”).
 

 The parties’ appellate briefs provide largely identical recitations of the factual and procedural background of this case that reveal no disputes over material questions of fact. On November 24, 2006, Mrs. Stewart made a purchase at a K-Mart store using a check drawn on the Stewarts’ checking account. The K-Mart store accepted the check, the check was sent to K-Mart’s bank, and K-Mart’s bank routed the check to a federal clearinghouse for
 
 *890
 
 presentation to
 
 and
 
 payment by the Stew-arts’ bank. During the process of transferring the check, the check was torn so that its routing number became unreadable and it could not be presented to the Stewarts’ bank. The check was returned to K-Mart unpaid. Pursuant to its agreement with Certegy, K-Mart informed Cer-tegy of the fact that the check had been returned unpaid.
 

 On December 9, 2006, having been informed that their check had been returned to K-Mart unpaid, the Stewarts authorized an electronic transfer of funds from their checking account to cover the amount of the unpaid check. Mrs. Stewart spoke with the Stewarts’ bank and learned that the bank had never been presented with the check.
 

 On December 11, 2006, Mrs. Stewart made a purchase at a department store that also subscribed to Certegy’s service. She attempted to pay for her purchase with a check. When her check was fed through the cash register, Mrs. Stewart was informed that the check would not be accepted. A statement was pxinted on the back of the check that read: “We are sorry that we cannot accept your check. Our decision was based in whole or in part on information from Certegy.” She then made her purchase using a credit card and left the store. After leaving the department store, the Stewarts spoke with a representative from Certegy. The representative informed them that their checking account had been flagged as a result of the check that had been returned to K~ Mart unpaid and that it would take some time to clear that information from Certe-gy’s records.
 

 The next day, Mrs. Stewart made a purchase at a home-improvement store that subscribed to Certegy’s service. When she attempted to pay for her purchase with a check, her check was fed through the cash register and was rejected. The check was returned to her with a receipt that read: “We are sorry that your check could not be authorized based in whole or in part on information from Certegy.” Mrs. Stewart then made her purchase using a credit card and left the store.
 

 On December 14, 2006, Certegy wrote to the Stewarts in response to their inquiry of December 11, 2006. In that letter, Cer-tegy apologized for any concern and inconvenience the matter had caused the Stew-arts, indicated that its files had been amended to reflect a “clear” status -with regard to the Stewarts’ checking account, and assured the Stewarts that no adverse information had been shared with any credit-reporting agency. Certegy wrote: “Please be assured that you are ‘clear and positive’ in our system at this time.” On December 29, 2006, Certegy wrote a second letter to Mrs. Stewart in which it again apologized for any inconvenience the matter had caused the Stewarts.
 

 On May 16, 2007, the Stewarts filed an action against K-Mart and Certegy. In their two-count complaint, they alleged that K-Mart and Certegy had inteifeed with their relationship with their bank and that K-Mart’s and Certegy’s actions constituted a nuisance. The trial court held a bench trial in the action on November 17, 2008. Testimony at the trial indicated that the only times pertinent to this case that a check drafted by Mrs. Stewart was refused acceptance were the two times detailed above and that Mr. Stewart did not have any checks rejected during the period pertinent to this case. The Stewarts admitted at the trial that they did not lose the use of their checking account and that they were able to deposit funds into their checking account. Evidence submitted at trial indicates that the Stewarts made seven deposits into their checking account during the months of November and December 2006
 
 *891
 
 and that, during those months, the bank paid 125 checks or other debits from their checking account Mrs. Stewart testified during trial that, during the period in question, she was able to use her checking account and that her relationship with her bank did not change.
 

 Both at the close of the Stewarts’ case and at the close of all the evidence, K-Mart and Certegy moved the trial court to enter a judgment as a matter of law in their respective favors. The trial court denied them motions.
 

 Following the bench trial, on November 20, 2008, the trial court entered a judgment in the Stewarts’ favor. It found that the evidence submitted at trial established all the elements of the Stewarts’ claims of intentional interference with a business relationship and nuisance as to both K-Mart and Certegy. It awarded the Stewarts $500 against K-Mart and $14,500 against Certegy. K-Mart and Certegy appeal.
 

 The standard by which we review a judgment following a bench trial is well settled:
 

 “When ore tenus evidence is pi'esent-ed, a presumption of correctness exists as to the trial court’s findings on issues of fact; its judgment based on these findings of fact will not be disturbed unless it is clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence.
 
 J & M Bail Bonding Co. v. Hayes,
 
 748 So.2d 198 (Ala.1999);
 
 Gaston v. Ames,
 
 514 So.2d 877 (Ala.1987). When the trial court in a nonjury case enters a judgment without making specific findings of fact, the appellate court ‘will assume that the trial judge made those findings necessary to support the judgment.’
 
 Transamerica Commercial Fin. Corp. v. AmSouth Bank,
 
 608 So.2d 375, 378 (Ala.1992). Moreover, ‘[u]nder the
 
 ore tenus
 
 rule, the trial court’s judgment and all implicit findings necessary to support it carry a presumption of correctness.’
 
 Transamerica,
 
 608 So.2d at 378. However, when the trial court improperly applies the law to facts, no presumption of correctness exists as to the trial court’s judgment.
 
 Allstate Ins. Co. v. Skelton,
 
 675 So.2d 377 (Ala.1996);
 
 Marvin's, Inc. v. Robertson,
 
 608 So.2d 391 (Ala.1992);
 
 Gaston,
 
 514 So.2d at 878;
 
 Smith v. Style Advertising, Inc.,
 
 470 So.2d 1194 (Ala.1985);
 
 League v. McDonald,
 
 355 So.2d 695 (Ala.1978). ‘Questions of law are not subject to the ore tenus standard of review.’
 
 Reed v. Board of Trustees for Alabama State Univ.,
 
 778 So.2d 791, 793 n. 2 (Ala.2000). A trial court's conclusions on legal issues carry no presumption of correctness on appeal.
 
 Ex parte Cash,
 
 624 So.2d 576, 577 (Ala.1993). This court reviews the application of law to facts de novo.
 
 Allstate,
 
 675 So.2d at 379 (‘[W]here the facts before the trial court are essentially undisputed and the controversy involves questions of law for the court to consider, the [trial] court’s judgment carries no presumption of correctness.’).”
 

 City of Prattville v. Post,
 
 831 So.2d 622, 627-28 (Ala.Civ.App.2002).
 

 K-Mart and Certegy contend that the trial court erred when it denied their motions for a judgment as a matter of law as to the Stewarts’ claims of intentional interference with their relationship with their bank and nuisance. We address each of those claims in turn.
 

 “The tort of interference with a business relationship is designed to protect property interests in businesses and to compensate for the damage caused by that interference. It is the right to do business in a fair setting that is protected.”
 
 Utah Foam Prods., Inc. v. Polytec, Inc.,
 
 584
 
 *892
 
 So.2d 1345, 1353 (Ala.1991) (citing
 
 Sparks v. McCrary,
 
 156 Ala. 382, 47 So. 332 (1908), and
 
 Gross v. Lowder Realty Better Homes & Gardens,
 
 494 So.2d 590 (Ala.1986)). In
 
 Gross,
 
 the supreme court combined the torts of intentional interference with a contract and intentional interference with a business relationship and set forth the following five elements for those torts: (1) a business relationship or contract to which the plaintiff is a party; (2) knowledge by the defendant of that relationship or contract; (3) intentional interference with that relationship or contract by the defendant; (4) a lack of justification for the interference; and (5) damage to the plaintiff.
 
 See Gross,
 
 494 So.2d at 597. The fourth element, lack of justification, is an affirmative defense and is not part of the plaintiffs prima facie case.
 
 See id.
 
 at 597 n. 3.
 

 K-Mart and Certegy contend that there was no evidence presented at trial demonstrating the third element of the Stewarts’ intentional-interference claim, i.e., there was no evidence indicating that they interfered with the Stewarts’ relationship with them bank. We agree.
 

 We will accept for purposes of this appeal that the Stewarts’ relationship with their bank constitutes the kind of relationship subject to their intentional-interference claim because K-Mart and Certegy do not argue otherwise. However, neither K-Mart nor Certegy interfered with that relationship in a manner that could cause them to be liable under the intentional-interference claim. Although, in previous cases, our supreme court has identified, among other things, the termination of a contract and the termination of an employment relationship as the types of actions that could give rise to a claim of intentional interference with a business relationship
 
 (see, e.g., Ex parte Awtrey Realty Co.,
 
 827 So.2d 104, 109 (Ala.2001), and
 
 Thomas v. Williams,
 
 21 So.3d 1234, 1242 (Ala.Civ.App.2008)), no such actions were alleged or proven in the present case.
 

 Throughout the period in which Certegy had “flagged” the Stewarts’ account in its system, the Stewarts were able to transact a substantial amount of business relative to their checking account. They were able to make deposits into their checking account. There was no limitation on their ability to make withdrawals from their checking account. There was no evidence presented at trial indicating that their bank did not pay every check that was presented to it during that period. Most important, there was no evidence indicating that any contractual relationship that the Stewarts had with their bank was altered in any manner as a result of any action taken by either K-Mart or Certegy.
 

 The actions the Stewarts allege on the part of K-Mart and Certegy, and the evidence adduced at the bench trial, simply do not rise to a level of interference with the Stewarts’ relationship with their bank that gives rise to liability in tort. As a result, the trial court erred when it failed to grant K-Mart’s and Certegy’s motions for a judgment as a matter of law with regard to the Stewarts’ claim that K-Mart and Certegy intentionally interfered with their business relationship with their bank.
 
 [1]
 

 As previously noted, the trial court also based its judgment in favor of the Stewarts on their claim that K-Mart’s and Certegy’s actions with regard to the unpaid check returned to K-Mart and the two checks written by Mrs. Stewart that
 
 *893
 
 the department store and the home-improvement store rejected constituted a nuisance. K-Mart and Certegy contend that they did not deprive the Stewarts of the use and enjoyment of their checking account as would be necessary to constitute a nuisance and that the acts of which the Stewarts complain were not sufficiently recurrent in nature to give rise to a claim of nuisance.
 

 In
 
 Russell Corp. v. Sullivan,
 
 790 So.2d 940, 951 (Ala.2001), our supreme court wrote:
 

 “ ‘A “nuisance” is anything that works hurt, inconvenience or damage to another. The fact that the act done may otherwise be lawful does not keep it from being a nuisance. The inconvenience complained of must not be fanciful or such as would affect only one of fastidious taste, but it should be such as would affect an ordinary reasonable man.’
 

 “Ala.Code 1975, § 6-5-120. This statute is a codification of Alabama’s common-law nuisance principles. This Court has recognized that even a lawful and careful activity, when combined with culpable acts, constitutes a nuisance if the activity hurts, inconveniences, or damages the complaining party. See
 
 Tipler v. McKenzie Tank Lines,
 
 [547 So.2d 438 (Ala.1989)] ...
 

 “In Alabama, a nuisance can be either private or public. ‘A public nuisance is one which damages all persons who come within the sphere of its operation, though it may vary in its effects on individuals. A private nuisance is one limited in its injurious effects to one or a few individuals.’ Ala.Code 1975, § 6-5-121;
 
 Hunter-Benn Co. v. Nelson,
 
 267 Ala. 472, 103 So.2d 783 (1958).”
 

 In addition, our supreme court has written that
 

 “the term ‘nuisance’ involves the idea of recurrence of the acts causing the injury.... ‘There is a wide difference between tort, constituting an invasion of personal and contract right, and nuisance. The former expends its force in one act, although injurious consequences may be of lasting duration. A nuisance involves the idea of continuity or recurrence.’ ”
 

 Banks v. Harbin,
 
 500 So.2d 1027, 1029 (Ala.1986) (quoting
 
 McCalla v. Louisville & Nashville R.R.,
 
 163 Ala. 107, 110-11, 50 So. 971, 972 (1909)). Citing
 
 Borland v. Sanders Lead Co.,
 
 369 So.2d 523 (Ala.1979), this court has written that “[t]he law of nuisance applies when there is an interference with the use and enjoyment of one’s property.”
 
 Huff v. Smith,
 
 679 So.2d 259, 261 (Ala.Civ.App.1996).
 

 We agree with K-Mart and Certegy that there was no evidence presented at trial indicating that Mr. Stewart ever lost the use and enjoyment of his checking account. He testified that no check he had written on the checking account had ever been rejected by a merchant or that he actually had been inhibited in any way from using his checking account. Indeed, he testified specifically that he had never lost the use and enjoyment of the checking account. As a result, the defendants were due a judgment as a matter of law on his nuisance claim.
 

 Moreover, as to both Mr. Stewart and Mrs. Stewart, the record does not support a conclusion that the incidents on which they base then1 nuisance claim were sufficiently continuing and recurring to give rise to liability for a nuisance. In
 
 Banks v. Corte,
 
 521 So.2d 960 (Ala.1988), our supreme court examined a claim that a company had conducted a series of three controlled burns over the course of three days and that, on the day following the last controlled burn, the smoke from those con
 
 *894
 
 trolled burns had obstructed vision on a nearby road, resulting in an eight-car collision. The plaintiff, the executor of the estate of a passenger killed in the collision, claimed that the company's actions in conducting the controlled burns constituted a nuisance. The trial court entered a summary judgment in favor of the company on the plaintiffs nuisance claim, and, on appeal, the supreme court affirmed. Among other things, the supreme court held that the fact that the company had conducted only three controlled burns did not constitute evidence of a nuisance that was sufficiently continuing or recurring as would give rise to liability for the tort of nuisance.
 
 Banks v. Corte,
 
 521 So.2d at 962.
 

 In the present case, there are only three acts of the defendants on which the Stew-arts base their nuisance claim. The first is K-Mart’s reporting to Certegy that the check drafted by Mrs. Stewart was returned to K-Mart unpaid. The second and third acts are, respectively, Certegy’s advice to the department store and to the home-improvement store that those stores not accept the checks that Mrs. Stewart had tendered in payment of the goods she sought to purchase. As with the three controlled burns examined in
 
 Banks v. Corte,
 
 the incidents in the present case, which are only three in number and which were quickly resolved, were not sufficiently recurring to constitute a nuisance.
 
 See Banks v. Corte,
 
 521 So.2d at 962.
 
 [2]
 

 Based on the foregoing, we conclude that there was insufficient evidence to support either of the Stewarts’ claims against K-Mart and Certegy. As a result, the trial court erred when it denied K-Mart’s and Certegy's motions for a judgment as a matter of law. Therefore, we reverse the trial court’s judgment and remand the cause to the trial court for the entry of a judgment consistent with this opinion.
 

 REVERSED AND REMANDED.
 

 PITTMAN, BRYAN, THOMAS, and MOORE, JJ., concur.
 

 [1]
 

 . The Stewarts have never asserted that either K-Mart or Certegy interfered with their business relationships with those merchants that. on Certegy's advice, refused to allow Mrs. Stewart to make her purchases by check. As a result, we do not address that issue.
 

 [2]
 

 . The Stewarts argue that it was Certegy's flagging of their bank account in its system that constituted a nuisance and, as a result, that the acts they allege caused a nuisance were sufficiently recurring in nature. However, the act that could be argued to have proximately caused the two merchants to refuse to accept a check from Mrs. Stewart was not Certegy's flagging of the Stewarts' bank account in its system but Certegy's advising the two merchants that they should not accept Mrs. Stewart’s checks. This advice was the only act committed by either defendant that could be seen as the proximate cause of any damage the Stewarts may have suffered by the refusal of the two merchants to accept Mrs. Stewart's checks. As noted above, those two instances of advice were not sufficiently recurring in nature to give rise to liability on the part of either defendant for nuisance.