These appeals are from a judgment rendered on a jury verdict for the plaintiff *Page 463 
Marilyn Hayes against the defendants Vaughan Chilton Medical Center, Inc., and Jeffrey Potts. Hayes sued Vaughan Chilton Medical Center and Jeffrey Potts, the hospital's administrator, alleging slander, libel, breach of contract, and the tort of outrage, based upon their submission of a letter to the Alabama Board of Nursing. The case was tried from August 3 to August 7, 1998. At the close of the plaintiff's evidence, the defendants moved for a judgment as a matter of law, pursuant to Rule 50, Ala.R.Civ.P., asserting that the plaintiff had not presented sufficient evidence to support her claims. The trial judge granted the motion as to Hayes's slander, libel, and breach-of-contract claims, finding that the statements contained in the letter were "substantially correct." However, he submitted the plaintiff's outrage claim to the jury. The jury returned a verdict against both defendants, awarding $150,000 in compensatory damages and $750,000 in punitive damages. The trial court entered a judgment on that verdict.
The defendants filed timely posttrial motions, including a motion challenging the punitive-damages award as excessive, citing the factors set out in Hammond v. City of Gadsden, 493 So.2d 1374
(Ala. 1986), and its progeny. Because the trial judge did not rule on these motions, they were denied by operation of law. Rule 59.1, Ala.R.Civ.P. The defendants separately appealed.
 I. Facts
The evidence presented showed that in 1992 Marilyn Hayes, a registered nurse, was hired to work in the emergency room at Central Alabama Community Hospital in Clanton. Shortly after she was hired, Jeffrey Potts, the hospital administrator, promoted her to be director of the emergency room. In late 1992, Vaughan Chilton Medical Center, Inc., took over the management of the hospital. Vaughan Chilton soon said that it was necessary to make cuts in personnel throughout the hospital and in each department; thus, it required the employees to reapply for their jobs. Hayes reapplied and was again selected by Potts and by Elsie Yates Duke, the hospital's business controller, to be director of the emergency room. She remained in that position until the end of May 1995, when she informed Potts that she could no longer handle the job and requested reassignment to a different emergency-room position. She also requested a two-week vacation. Both requests were granted. Cheri Yeargan Bowden was appointed to replace Hayes as director of the emergency room.
While on vacation, Hayes visited Vaughan Chilton's emergency room twice within a 24-hour period (on June 3 and 4, 1995), seeking treatment for a migraine headache. On the first of these visits, Hayes received an injection of Demerol and Phenergan. On the second visit, Hayes received an injection of Nubain and Vistaril. The doctor on duty was Dr. Kumjad Unnoppet (referred to in the record as "Dr. Kumjad"). No physical examination was performed on Hayes; she was simply given shots. Sometime after the second shot was ordered for Hayes, a nurse advised Dr. Kumjad that Hayes had been in earlier for a shot. When he learned of the first shot, he inquired of the attending nurse, who stated that Hayes came to the hospital "a lot" to get the shot for migraine headaches. When Dr. Kumjad learned that Hayes had been in the emergency room on a number of previous occasions, and that she frequently requested a shot to relieve migraine pain, he determined that Hayes might have a problem with drugs. He indicated on Hayes's chart that she should be admitted for "detox and psy[chiatric] consult."
Cindy Brown, Vaughn Chilton's laboratory manager, testified that Potts "had told me that he had talked with the doctor after Hayes had come to the emergency room and asked him to write that on her chart." Dr. Kumjad testified that he did not have a conversation with Potts about what he wrote on the chart. He stated that he had tried to talk to Potts, but could *Page 464 
not get in touch with him, so, he said, he talked to Bowden — the new director of the emergency room and Hayes's supervisor — about the problem.
After Dr. Kumjad reported his concerns, Potts and nursing director Linda Smith contacted the Alabama Nursing Board and inquired as to how to proceed. They were informed that the Board of Nursing guidelines impose a mandatory duty to report any such concerns. Alabama law provides immunity to any person "who in good faith reports information to the board" regarding potential drug abuse. § 34-21-25(i), Ala. Code 1975.
Potts and Smith conducted an investigation of Hayes's job performance. They found records indicating that Hayes had checked out controlled substances without appropriate documentation. In addition, they discovered records reflecting that Hayes had received injections of controlled drugs without a physician's order. In light of their findings, Potts and Smith asked Hayes to meet with them. During the meeting, they told Hayes that they were concerned that she might have a problem and said they wanted to get help for her.
At Hayes's request, Potts agreed to allow her to remain employed as a nurse, but without access to the keys to the narcotics locker. Potts provided Hayes with a written agreement to that effect, but she declined to sign it. Hayes contends in her brief that the agreement "severely restricted her authority and ability to perform her duties and . . . was so unilateral in nature without basis as to be unacceptable." Because she refused to sign the agreement, she was not allowed to return to work. Hayes testified that she was embarrassed and humiliated by what she referred to as the "allegations" made against her; that she became reclusive and stayed at home, to avoid contact with people who would know the circumstances of her departure from the hospital; and that she ceased all involvement in social and church life.
Duke, the hospital's business controller, testified that Potts made her aware that he had never wanted Marilyn Hayes in the position of emergency-room director and that he wanted Donna Turner to take that job. Duke testified that Potts was infatuated with Turner and that he had made sexual advances toward Turner.
Potts filed a report with the Alabama Nursing Board, setting out the details of the hospital's internal investigation. Dr. Kumjad testified that in his opinion the report to the board should have been made. The Nursing Board received the information and initiated its own investigation. Based on that independent investigation, the Nursing Board brought formal charges against Hayes in May 1997.
Hayes then sued Vaughan Chilton and Potts, alleging that "on or about June 15, 1995, and continuing thereafter, the Defendants intentionally or recklessly caused Plaintiff to suffer emotional and/or physical distress by accusing her publicly of being a drug addict, a thief, a danger to the public and of failing to perform her duties." The public accusation to which she was referring was the letter submitted by Potts, as hospital administrator, to the Alabama Board of Nursing. At the close of the plaintiff's case, the trial judge ruled that the evidence clearly demonstrated that the statements made in that report were "substantially correct" and, therefore, entered a judgment as a matter of law for the defendants on the libel, slander, and breach-of-contract counts. The Court allowed the outrage claim to go to the jury, upon the testimony of Cindy Brown.
 II. Analysis
The defendants argue that the trial court erred in denying their motion for a judgment as a matter of law on the claim alleging the tort of outrage.
The tort of outrage was first recognized by this Court inAmerican Road Service Co. v. Inmon, 394 So.2d 361 (Ala. 1981). In that case Inmon, who had formerly been *Page 465 
employed as a claims supervisor by American Road Service Company, sued his former employer, alleging that he had been mistreated during the events leading to his termination and that that mistreatment had constituted outrageous conduct; he argued that outrageous conduct should be recognized as a tort. In Inmon, this Court recognized such a tort. It discussed the requirements of the tort, emphasizing the extreme nature of the defendant's conduct that would be sufficient to constitute the tort, and the severity of the emotional distress that would entitle a person to recover for that tort:
 "The emotional distress [caused by the defendant's conduct] must be so severe that no reasonable person could be expected to endure it. Any recovery must be reasonable and justified under the circumstances, liability ensuing only when the conduct is extreme. Comment, Restatement [(Second) of Torts], at 78. By extreme we refer to conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society. [Cmt. d], Restatement, supra at 72."
Id. at 365. The evidence indicated that American Road Service Company had investigated an alleged "kickback" scheme; that in the course of that investigation Inmon's honesty was questioned; and that he was harassed, investigated without cause, humiliated, accused of improper dealings, and ultimately terminated from his job, without justification. Inmon testified that as a result of that treatment he had suffered emotional distress, resulting in loss of weight and insomnia. The trial court entered a judgment for Inmon. After recognizing the tort and stating the nature of that tort, this Court held that the evidence Inmon submitted in support of his claim fell short of proving the tort of outrage. The judgment in his favor was reversed.
The tort of outrage is an extremely limited cause of action. It is so limited that this Court has recognized it in regard to only three kinds of conduct: (1) wrongful conduct in the family-burial context, Whitt v. Hulsey, 519 So.2d 901 (Ala. 1987); (2) barbaric methods employed to coerce an insurance settlement,National Sec. Fire Cas. Co. v. Bowen, 447 So.2d 133 (Ala. 1983); and (3) egregious sexual harassment, Busby v. Truswal Sys.Corp., 551 So.2d 322 (Ala. 1989). See also Michael L. Roberts and Gregory S. Cusimano, Alabama Tort Law, § 23.0 (2d ed. 1996). In order to recover, a plaintiff must demonstrate that the defendant's conduct "(1) was intentional or reckless; (2) was extreme and outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected to endure it."Green Tree Acceptance, Inc. v. Standridge, 565 So.2d 38, 44 (Ala. 1990) (citing American Road Service Co. v. Inmon).
Having carefully considered the evidence presented in this case, we conclude that the trial court erred in denying the defendants' motion for a judgment as a matter of law on the plaintiff's tort-of-outrage claim. That claim should not have gone to the jury. The evidence did not show the level of conduct our cases have recognized to be actionable as outrageous. The only evidence Hayes offered to show possible malice on the part of Jeffrey Potts was Duke's testimony stating that Potts had "never liked" Hayes. That evidence is, as a matter of law, insufficient to create a question for the jury. In Inmon, the plaintiff's evidence was far more persuasive than the evidence presented here, and that evidence was held to be insufficient to support a claim alleging the tort of outrage. See Nipper v. Variety Wholesalers,Inc., 638 So.2d 778, 780 (Ala. 1994).
The judgment in favor of plaintiff Hayes is reversed, and a judgment is rendered in favor of the defendants.
REVERSED AND JUDGMENT RENDERED. *Page 466 
Hooper, C.J., and Maddox, Houston, Cook, See, Lyons, Brown, Johnstone, and England, JJ., concur.