Sidney O. Griner suffered an on-the-job injury to his back. It required surgical correction and extensive medical treatment. At the time of Griner's injury, The Travelers Indemnity Company of Illinois provided the workers' compensation coverage for Griner's employer, and Crawford 
Company administered the claims for Travelers. Travelers agreed, pursuant to a settlement agreement with Griner, to pay any "reasonably necessary future medical expenses" resulting from Griner's injury. Griner ultimately sued Travelers and Crawford, alleging the tort of outrage, fraud, and contempt of court. Specifically, Griner asserted that the defendants had refused to authorize certain "reasonably necessary medical expenditures," in particular expenditures for the purchase of a hospital bed, for the purchase of a whirlpool tub, and for psychotherapy. At trial, the defendants moved for a judgment as a matter of law because, they argued, Griner had presented no evidence creating a jury question on the tort-of-outrage claim.[1] The trial court denied the motion. A jury awarded Griner $300,000 in compensatory damages and $200,000 in punitive damages.
The trial court erred in submitting Griner's outrage claim to the jury, because the evidence presented at trial was insufficient to demonstrate that the defendants' handling of his claims for insurance benefits amounted to "outrageous" conduct as defined by this Court. Because I think the trial court erred in denying the defendants' motion for a judgment as a matter of law on the tort-of-outrage claim, I would reverse the judgment for Griner. Therefore, I respectfully dissent.
This Court first recognized the tort of outrage in American RoadService Co. v. Inmon, 394 So.2d 361 (Ala. 1981). In that case Inmon, who had formerly been employed as a claims supervisor by American Road Service Company, sued his former employer and presented evidence establishing that he had been harassed, investigated without cause, humiliated, accused of improper dealings, treated uncustomarily, and terminated without justification. Inmon, 394 So.2d at 367. In recognizing the tort of outrage, this Court emphasized the extreme nature of a defendant's conduct that would be sufficient to constitute the tort, and the severity of the emotional distress that would entitle a person to recover for that tort: *Page 816 
 "The emotional distress [caused by the defendant's conduct] must be so severe that no reasonable person could be expected to endure it. Any recovery must be reasonable and justified under the circumstances, liability ensuing only when the conduct is extreme. Comment, Restatement [(Second) of Torts], at 78. By extreme we refer to conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society."
Inmon, 394 So.2d at 365. This Court held that the evidence Inmon had submitted in support of his claim fell short of proving the tort of outrage because he had presented "no evidence upon which reasonable people could base the belief that the [defendant] intended to cause Inmon severe emotional distress." Id. at 367. Accordingly, this Court reversed the judgment in his favor.
In numerous decisions following Inmon, we have made it clear that a plaintiff bears an extremely heavy evidentiary burden when he undertakes to make out a case for the jury on an outrage theory. In Potts v. Hayes,771 So.2d 462 (Ala. 2000), this Court observed:
 "The tort of outrage is an extremely limited cause of action. It is so limited that this Court has recognized it in regard to only three kinds of conduct: (1) wrongful conduct in the family-burial context; (2) barbaric methods employed to coerce an insurance settlement; and (3) egregious sexual harassment. In order to recover, a plaintiff must demonstrate that the defendant's conduct `(1) was intentional or reckless; (2) was extreme and outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected to endure it.'"
771 So.2d at 465 (citations omitted); see Thomas v. BSE Indus.Contractors, Inc., 624 So.2d 1041, 1044 (Ala. 1993) (noting that "[t]his Court has consistently held that the tort of outrage is a very limited cause of action" and, "[a]s a consequence, this Court has held in a large majority of the outrage cases reviewed that no jury question was presented").
Only once has this Court found the tort of outrage in a workers' compensation case. In Continental Casualty Insurance Co. v. McDonald,567 So.2d 1208 (Ala. 1990), McDonald sued his workers' compensation insurer, CNA, alleging the tort of outrage and asserting that CNA, in an attempt to minimize its liability for benefits, had tried to coerce him into settling for a small lump-sum settlement of his medical claim.[2]McDonald, 567 So.2d at 1210. The evidence demonstrated that CNA delayed payments to doctors, hospitals, and pharmacists for unreasonable lengths of time, causing, for example, hospitals to threaten collection actions against him and a pharmacy to refuse to provide *Page 817 
further pain medication. Id. The evidence indicated that CNA had failed to offer any reasonable explanation for most of these delays and that it had questioned the reasonable necessity of only a very few expenses. Id. at 1220. Further, CNA had resisted paying for a hot tub or whirlpool bath prescribed by his doctor, suggesting instead a membership in a health spa or in-home alternatives. Id. at 1214. Even when McDonald's physician wrote two letters to CNA explaining why neither of those alternatives would be acceptable, CNA refused to authorize the device. Id. at 1215. This Court held that McDonald had presented sufficient evidence for a jury to conclude that he had suffered severe emotional distress because of the manner in which CNA handled his claims for medical benefits. Id. at 1219. In so holding, the Court noted that, while "CNA had a legal right to question the reasonable necessity of the expenses," it nevertheless had "no legal right to delay payments for no good reason" and that "the jury could have found that, on occasions when CNA did assert its legal rights, it did not do so in a permissible way." Id. at 1220.
The situation in McDonald represents "the minimum threshold that a defendant must cross in order to commit outrageous conduct." State FarmAuto. Ins. Co. v. Morris, 612 So.2d 440, 443 (Ala. 1993). The evidence presented in this case falls far short of this standard. Griner, unlike the plaintiff in McDonald, presented no evidence of a concerted plan on the part of the defendants to coerce him into accepting a lump-sum settlement. Moreover, the evidence of delay in this case is insufficient to conclude that Travelers and Crawford engaged in a course of conduct intended to distress Griner to the point of settlement. Rather, it appears that the defendants did not delay payments "for no good reason" and "assert[ed] [their] legal rights . . . in a permissible way."McDonald, 567 So.2d at 1220.
Unlike the defendant in McDonald, the defendants in this case submitted evidence justifying the delays. Specifically, the defendants presented evidence indicating that any delay in authorizing treatment or supplies was due to numerous instances in which Griner's doctors delayed in sending, or failed to send, the requisite explanations concerning prescribed procedures. With regard to the whirlpool, the evidence indicates that, while three doctors prescribed use of a whirlpool tub, none of them stated that the suggestion by Travelers that Griner take a health-club membership or use a portable whirlpool device presented unacceptable alternatives. Also, Griner submitted to Travelers conflicting estimates as to the cost of the whirlpool therapy. Specifically, Travelers received a treatment note from Dr. Stanford Faulkner stating that Griner had found a whirlpool tub costing $650. However, a month later, Travelers received a faxed document from Griner's attorney that included a proposal to remodel Griner's home to accommodate the installation of a whirlpool tub; the total price of the proposed work was $4,576. Given the discrepancy between these two estimates, Travelers had a reasonable basis for questioning the medical necessity of an installed whirlpool tub as opposed to a portable one. The way Travelers handled Griner's claims in this case simply does not rise to the level of tortious conduct demonstrated in McDonald. Because McDonald established the minimum threshold of conduct sufficient to state a tort-of-outrage claim, the trial court erred in submitting Griner's outrage claim to the jury.
[1] At the close of the evidence, the trial court entered a summary judgment for Travelers and Crawford on the fraud claim, reserved the contempt issue for resolution at a later time, and submitted to the jury the claim for damages based upon the tort-of-outrage claim.
[2] In McDonald, this Court wrote:
 "CNA's records indicated that it closed McDonald's file in late 1981, but reopened it in 1982 when it received communications from McDonald and his doctors. The file includes a note dated May 19, 1982, stating in part, `I believe if Mr. McDonald is going to have continued problems. Will settle in BSO.' Debbie Malinak, a CNA claims specialist who had been handling McDonald's file since October 1981, testified that `BSO' stands for `benefit settlement option,' which is a structured settlement of the claim that would extinguish CNA's liability for further medical payments."
567 So.2d at 1212.
CNA delayed payment for McDonald's medical and pharmacy expenses from May 1982 until McDonald sued in 1987; therefore, the evidence indicated that CNA's actions were part of an intentional pattern of delays aimed at pressuring McDonald into accepting a settlement. Id. at 1212-14. *Page 818