[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-11228
Non-Argument Calendar
_____

D.C. Docket No. 3:12-cv-02402-CLS

MARK D. DAVIS,

                                                          Plaintiff-Appellant,

versus

GILBERT PORTERFIELD SELF, et al.,

                                                          Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(November 19, 2013)

Before MARTIN, JORDAN, and KRAVITCH, Circuit Judges.

PER CURIAM:

This 42 U.S.C. § 1983 action arises out of lengthy custody and child support proceedings in the Tennessee and Alabama state courts. Mark Davis, the father, appeals from the district court's dismissal of his *pro se* civil suit seeking injunctive and declaratory relief, as well as damages, against numerous individuals who were involved, some tangentially, in his state proceedings. The named defendants range from Robert J. Bentley, the Governor of Alabama, to Brenda K. Baker, Mr. Davis' former mother-in-law, and include Gilbert Porterfield Self, an Alabama state court circuit judge; Ned M. Suttle, a retired Alabama state court circuit judge; Terry A. Moore, a judge for the Alabama Court of Civil Appeals; Nancy T. Buckner, the Commissioner of the Alabama Department of Human Resources; Cynthia L. Bratcher, the Director of the Lauderdale County Department of Human Resources; Chris Connolly, the District Attorney for the 11th Judicial Circuit of Alabama; Robert F. Smith and Stacy Bryant Hooper, Assistant District Attorneys for the 11th Judicial Circuit of Alabama; Melinda Morgan Austin and Lindsey Mussleman Davis, private attorneys representing Mr. Davis' former wife in the custody and child support proceedings; and Tonya Blackstock Smith, Mr. Davis' former wife.

The crux of the complaint is Mr. Davis' claim that the Alabama state courts lack subject-matter jurisdiction over the underlying custody dispute. Having raised and lost this argument at all levels of the Alabama state court system, Mr. Davis filed a § 1983 action in the Northern District of Alabama alleging that the

2

defendants conspired together to violate his First, Fourth, Fifth, and Fourteenth Amendment rights.

Having reviewed the record and the parties' briefs, we affirm the district court's order dismissing Mr. Davis' claims against all the defendants.

**I**

As a preliminary matter, Mr. Davis argues that the district court improperly took judicial notice of opinions and judgments in the underlying custody and child support proceedings, many of which were attached as exhibits to Mr. Davis' complaint. We find no error in the district court's use of these opinions in setting out the complex procedural history of this case. *See* Fed. R. Evid. 201(b)(2) ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."); *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994) ("[A] court may take notice of another court's order only for the limited purpose of recognizing the 'judicial act' that the order represents or the subject matter of the litigation.").

3

## II

We review *de novo* a district court's dismissal under Rule 12(b)(6) for failure to state a claim. *Butler v. Sheriff of Palm Beach Cnty.*, 685 F.3d 1261, 1265 (11th Cir. 2012). Although the complaint need not contain detailed factual allegations, in order to state a claim, the plaintiff must allege sufficient facts to make the claim "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to meet this standard. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

*Pro se* pleadings are held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Still, a court may not "serve as *de facto* counsel for a party" or "rewrite an otherwise deficient pleading in order to sustain an action." *GJR Inv., Inc. v. Cnty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998), *overruled on other grounds by Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

## III

On appeal, Mr. Davis challenges the dismissal of his claims for injunctive and declaratory relief under *Younger v. Harris*, 401 U.S. 37 (1971), and its

4

progeny.  We review abstention decisions under *Younger* for abuse of discretion, *31 Foster Children v. Bush*, 329 F.3d 1255, 1274 (11th Cir. 2003), and find none here.

There is no doubt that matters involving domestic relations and child custody implicate important state interests.  *See Moore v. Sims*, 442 U.S. 415, 435 (1979) ("Family relations are a traditional area of state concern.").  In addition, Mr. Davis does not dispute that proceedings were ongoing in the Alabama state courts at the time he filed his federal complaint.  Accordingly, the district court correctly ruled that the first two prongs of the *Younger* inquiry were satisfied.  *See 31 Foster Children*, 329 F.3d at 1274.

Mr. Davis suggests that *Younger* does not apply where the state court lacks subject-matter jurisdiction.  *See* Appellant's Br. at 26.  But a jurisdictional challenge is insufficient in and of itself to overcome the application of *Younger*. *See, e.g.*, *Rose v. Utah*, 399 F. App'x 430, 435 (10th Cir. 2010) (affirming the application of *Younger* where the plaintiff challenged the jurisdiction of the underlying state proceedings).  Otherwise, any question regarding the state court's jurisdiction could be turned into a federal lawsuit.

Mr. Davis also argues that the "state proceedings do not provide an adequate remedy for [his] federal claims."  Appellant's Br. at 28 (alteration in original).  Yet he does not claim that he was procedurally barred from raising his constitutional

5

claims in state court, and indeed, he notes that he has already done so on numerous occasions. *See id.* Instead, Mr. Davis complains that he has lost on the merits at every level of the Alabama court system, including at the Alabama Supreme Court. Mr. Davis' argument misapprehends the standard for *Younger* abstention. As we have previously explained, "whether a claim would likely be successful on the merits in the state court is not what matters. Instead, what matters is whether the plaintiff is *procedurally* prevented from raising his constitutional claims in the state courts." *Pompey v. Broward Cnty.*, 95 F.3d 1543, 1551 (11th Cir. 1996) (emphasis in original). Because state procedure did not prevent Mr. Davis from raising his claims and filing a certiorari petition "seeking review on the merits in the United States Supreme Court," *id.*, we hold that the district court did not err in finding the third prong of the *Younger* inquiry satisfied. [1]

Finally, Mr. Davis argues that abstention is inappropriate because he has demonstrated "unusual circumstances" justifying equitable relief. Appellant's Br. at 26-27 (quoting *Mitchum v. Foster*, 407 U.S. 225, 230 (1972)). Mr. Davis' vague and conclusory allegations that the defendants conspired to violate his federal

---

[1] In his reply, Mr. Davis suggests that he was "barred from [further] raising the issue of lack of subject-matter jurisdiction in the state court due to law-of-the-case-doctrine." Reply Br. at 24. But this argument does not negate the fact that he was afforded a full and fair opportunity to raise the issue of subject-matter jurisdiction in the first instance. *Younger* abstention does not require state courts to reopen issues that have already been decided. *Cf. Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 n.5 (1988) ("There is no reason to apply law-of-the-case principles less rigorously to transfer decisions that implicate the transferee's jurisdiction. Perpetual litigation of any issue—jurisdictional or nonjurisdictional—delays, and therefore threatens to deny, justice.").

rights, however, do not rise to the level necessary to justify an exception to *Younger* abstention. Mr. Davis has challenged the subject-matter jurisdiction of the Alabama courts on at least three separate occasions, and each of his challenges has been addressed and denied on the merits by the Alabama courts. In addition, Mr. Davis has failed to cite to a single case holding that divorced parents are constitutionally entitled to equal co-parenting time unless one parent is found to be unfit, and we are aware of none. *See, e.g.*, *Crowley v. McKinney*, 400 F.3d 965, 969 (7th Cir. 2005) (suggesting that the constitutional rights of noncustodial parents may be weaker than the "rights of parents acting together"); *Zakrzewski v. Fox*, 87 F.3d 1011, 1014 (8th Cir. 1996) ("Zakrzewski's liberty interest in the care, custody, and management of his son has been substantially reduced by the terms of the divorce decree and Nebraska law."). Under these circumstances, without more specific and plausible allegations of bad faith or harassment by the defendants, we find no extraordinary circumstances justifying an exception to *Younger* abstention.

## IV

Mr. Davis also challenges the district court's determination that the state actors are shielded from his claims for damages under various immunity doctrines. We review *de novo* a district court's dismissal based on absolute or qualified immunity, accepting as true the allegations of the complaint. *Kyle K. v. Chapman*, 208 F.3d 940, 942 (11th Cir. 2000) (qualified immunity); *Long v. Satz*, 181 F.3d

7

1275, 1278 (11th Cir. 1999) (absolute immunity). Because the complaint's allegations demonstrate that the judicial, prosecutorial, and qualified immunity doctrines bar recovery against the state-official defendants, the district court properly dismissed the claims against these defendants under Rule 12(b)(6). *See Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003).

A.    The Judicial Defendants

Mr. Davis argues that Judges Self, Suttle, and Moore are not entitled to judicial immunity from damages because they "are acting, not in excess of jurisdiction, but in complete absence of all jurisdiction." Appellant's Br. at 29. This argument conflates the standard for judicial immunity and would have us hold that judges may be held liable for damages any time they incorrectly find in favor of jurisdiction. We decline to do so.

Under the applicable standard, "[j]udges are entitled to absolute judicial immunity from damages for those acts taken while they are acting in their judicial capacity unless they acted in the '*clear absence* of all jurisdiction.'" *Bolin v. Story*, 225 F.3d 1234, 1239 (11th Cir. 2000) (quoting *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978)) (emphasis added). "This immunity applies even when the judge's acts are in error, malicious, or were in excess of his or her jurisdiction." *Id.*

Even assuming that Mr. Davis' jurisdictional arguments have any merit, we cannot conclude that the defendants here acted in the "clear absence of all

8

jurisdiction."  The Court of Civil Appeals of Alabama has thrice upheld the Alabama trial court's jurisdiction over the child custody and support proceedings, and the Alabama Supreme Court has noted that "[t]his conclusion appears to be correct." *Ex Parte Blackstock*, 47 So. 3d 801, 803 n.1 (Ala. 2009).  *See also Davis v. Blackstock*, 47 So. 3d 796, 798 (Ala. Civ. App. 2007); *Ex parte Davis*, 82 So. 3d 695, 700-03 (Ala. Civ. App. 2011); *Davis v. Blackstock*, --- So. 3d ---, 2013 WL 1364083, *5-6 (Ala. Civ. App. Apr. 5, 2013).  Mr. Davis has failed to allege any facts plausibly suggesting that the judicial defendants knowingly issued these decisions in clear contravention of Alabama law.  Under these circumstances, the district court properly found that the judicial defendants were entitled to absolute immunity for actions taken in their judicial capacity.

B.    State Executive Officials

Mr. Davis argues that the district court erred in dismissing his claims against the state executive-branch officials because "all defendants were noticed of the constitutional deprivations and all have refused to respond to the notice." Appellant's Br. at 31.  His brief, however, fails to elaborate on this argument or to cite any authority in support.  Although we find that these issues are not "clearly raised in the briefs," *see Marek v. Singletary*, 62 F.3d 1295, 1289 n.2 (11th Cir. 1995), we will briefly address them nonetheless as they have been fully briefed by the appellees.

The Supreme Court has held that, in civil proceedings, "agency officials performing certain functions analogous to those of a prosecutor" are entitled to absolute immunity from claims for damages under § 1983. *Butz v. Economou*, 438 U.S. 478, 515 (1978). Under Alabama law, district attorneys are empowered to represent the state in enforcing child support orders by initiating civil or criminal actions in Alabama or federal courts. Ala. Code §§ 38-10-7(a), 38-10-7.1. Accordingly, the district court correctly found that the state officials acting in this capacity—Defendants Connolly, Smith, and Hooper—were entitled to absolute immunity.

In addition, the district court also correctly dismissed Mr. Davis' claims against Governor Bentley, State DHR Commissioner Buckner, and Lauderdale County DHR Director Bratcher. Because these claims stem from the defendants' exercise of discretionary authority within the Alabama Department of Human Resources, they provide a textbook example of the types of claims qualified immunity was intended to prevent. *See Whittier v. Kobayashi*, 581 F.3d 1304, 1307 (11th Cir. 2009) ("Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known.") (internal quotations marks omitted).

10

Although Mr. Davis argues that he placed all the defendants on notice of the alleged constitutional violations, he cites to no case law to support his argument that such notice suffices to lift the shield of immunity. State officials need not cease and desist in the exercise of their prosecutorial and discretionary functions solely based on the say-so of a disgruntled litigant. A prosecutor's actions in initiating a prosecution and presenting the state's case are entitled to absolute immunity even if undertaken with malicious intent. *See Hart v. Hodges*, 587 F.3d 1288, 1295 (11th Cir. 2009). Meanwhile, as the Supreme Court recently reiterated, "[q]ualified immunity . . . protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 132 S. Ct. 1235, 1244 (2012) (internal quotation marks omitted). Mr. Davis cites to no clearly established legal precedent that would have put the state executive-branch defendants on notice that their actions were unlawful. In fact, the Alabama Supreme Court has held to the contrary, and the case that forms the centerpiece of Mr. Davis' jurisdictional challenge—*Williams v. Williams*, 91 So. 3d 56 (Ala. Civ. App. 2011)—expressly distinguishes the circumstances of this case. *See id.* at 60 n.3 ("[T]his was not a case in which a foreign jurisdiction had failed to address child support so that no registration of the previously entered foreign judgment would have been required.") (citing *Davis*, 82 So. 3d at 701). As such, it was objectively reasonable for the state executive-branch officials to rely on the

11

Alabama courts' repeated determinations that subject-matter jurisdiction existed over the child custody and support proceedings.

## V

In his opening brief, Mr. Davis does not challenge the district court's dismissal of his (1) § 1983 claims against Defendants Blackstock, Davis, Austin, and Baker; (2) claims for abuse of process and the tort of outrage; and (3) claims under the Fifth Amendment. "[W]e [typically] do not address arguments raised for the first time in a *pro se* litigant's reply brief," *Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008), or arguments incorporated by reference to briefs filed below, *Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr S.A.*, 377 F.3d 1164, 1167 n.4 (11th Cir. 2004). Nonetheless, because Mr. Davis is *pro se* and we find these arguments lack merit, we briefly address them below.

The district court correctly ruled that Mr. Davis' allegations against the private party defendants—Melinda Morgan Austin, Lindsey Mussleman Davis, Brenda Baker, and Tonya Blackstock Smith—do not satisfy any of the recognized exceptions that permit private parties to be considered state actors for the purposes of § 1983.[2] A private party may be considered a state actor for purposes of § 1983 only in the "rare circumstances" that one of three conditions is satisfied: the state

---

[2] Because we find that no defendant may be held liable for damages under § 1983 and the district court properly dismissed Mr. Davis' claims for injunctive and declaratory relief under *Younger*, we do not reach Mr. Davis' arguments that the defendants violated his constitutional rights.

12

compulsion test, the public function test, or the nexus/joint action test. *See Rayburn ex rel. Rayburn v. Hogue*, 241 F.3d 1341, 1347 (11th Cir. 2001). Although Mr. Davis invokes the public functions and nexus/joint action test in name, his complaint fails to allege sufficient facts to support these arguments. The public function test applies where a private party "performed a public function that was traditionally the exclusive prerogative of the State." *Id.* The nexus/joint action test applies where "the State had so far insinuated itself into a position of interdependence with the [private parties] that it was a joint participant in the enterprise[ ]." *Id.* (alterations in original; internal quotation marks omitted). The district court correctly held that neither test was satisfied here because "Defendants Davis and Austin are simply private attorneys acting on behalf of their client, defendant Tonya Blackstock, who is a private citizen enmeshed in a bitter custody and child support dispute with her former husband." D.E. 58 at 57. Their successful attempts to litigate these issues in Alabama state court do not somehow transform these private individuals into state actors.

With respect to Defendant Baker, who is employed by the University of North Alabama, Mr. Davis argues that his former mother-in-law "used her state paid position to influence Defendant Suttle and others." Reply Br. at 12. But, as the district court correctly concluded, Mr. Davis fails to "identify any specific actions by Baker, or explain how any actions attributed to her deprived him of his

13

constitutional rights." D.E. 58 at 58. Accordingly, the district court properly dismissed the § 1983 claims against Ms. Baker.

Finally, Mr. Davis argues that the private defendants conspired with Judge Suttle and other state actors to deprive him of his federal rights. In order to succeed in such a claim, "the plaintiff must plead in detail, through reference to material facts, the relationship or nature of the conspiracy between the state actor(s) and the private persons." *Harvey v. Harvey*, 949 F.2d 1127, 1133 (11th Cir. 1992). Mr. Davis' conclusory allegations, which provide nothing more than a "summary of defendants' social and/or political engagements in northern Alabama," D.E. 58 at 60, amount to little more than conjecture and speculation. *See Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level. . . ."). Accordingly, Mr. Davis fails to "plead conspiracy sufficiently to transform the [private] appellees into state actors." *Harvey*, 949 F.2d at 1133.[3]

## VI

In his reply brief, Mr. Davis argues that he stated a claim for abuse of process against Ms. Blackstock because she engaged in "forum shopping" and presented "fraudulent information, provided material misrepresentations of fact,

---

[3] Mr. Davis also repeats his notice arguments with respect to the private defendants, arguing that he placed each defendant on notice of their allegedly unlawful actions and each failed to respond. *See* Reply Br. at 16. But he does not explain how these allegations suffice to turn any of these individuals into state actors.

and committed felony perjury" in the Alabama proceedings.  Reply Br. at 4-6. None of these allegations give rise to an abuse of process claim under Alabama law.  *See Willis v. Parker*, 814 So. 2d 857, 865 (Ala. 2001) ("To establish a claim of abuse of process, [plaintiff] must prove: (1) the existence of an ulterior purpose; 2) a wrongful use of process, and 3) malice.") (internal quotation marks omitted). Because Mr. Davis has failed to plead the existence of any ulterior purpose, the district court properly dismissed his claim for abuse of process.  *See Duncan v. Kent*, 370 So. 2d 288, 290 (Ala. 1979) ("To maintain an action for abuse of process, existence of ulterior purpose must be proved.").

## VII

Although the Court does not doubt that Mr. Davis was both outraged and distressed by the outcome of the Alabama state proceedings, that is not enough to state a claim for relief under Alabama's tort of outrage.  "The tort of outrage is an extremely limited cause of action."  *Potts v. Hayes*, 771 So. 2d 462, 465 (Ala. 2000).  In order to succeed, the complained-of conduct must be "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society."

15

*Harris v. McDavid*, 553 So. 2d 567, 570 (Ala. 1989) (internal quotation marks omitted).  The complained of conduct here falls far short of meeting this standard.[4]

## VIII

At the district court, Mr. Davis argued that dismissal of his Fifth Amendment claims would be premature because defendants' conduct constituted a violation of the Takings Clause, which applies to both federal and state governments.  *See, e.g.*, D.E. 30 at 19; Appellant's Br. at 31 ("Plaintiff adopts herein the same legal arguments found in the replies to the motions to dismiss see Doc 29, 30, 31, 32, 33, 39, 40, 41, 46, 51,52, 57, as if fully set forth herein.").  The Fifth Amendment, however, only prohibits a government from taking private property for public use without just compensation.  *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 536 (2005).  Because Mr. Davis' complaint fails to allege that defendants took his property for public use, even accepting all of his factual allegations as true, he has not stated a Fifth Amendment claim that is plausible on its face.

## IX

The district court's dismissal of Mr. Davis' claims is affirmed in its entirety.

**AFFIRMED.**

---

[4] Because we uphold the district court's dismissal of the state law claims, we do not reach Mr. Davis' argument that the "defendants with prosecutorial immunity claims" would not have been immune from civil liability under Alabama state law.  Appellant's Br. at 30.

16