IN THE UNITED STATES DISTRICT COURT 
 FOR THE MIDDLE DISTRICT OF ALABAMA 
 NORTHERN DIVISION 

ALLISON P. SMITH, ) 
 ) 
 Plaintiff, ) 
 ) 
v. ) Civ. Act. No.: 2:18-cv-870-ECM 
 ) (WO) 
TOMMY GLASSCOCK, ) 
 ) 
 Defendants. ) 

 MEMORANDUM OPINION and ORDER 

 Now pending before the Court is a motion for summary judgment filed on January 
6, 2020, by Defendant Tommy Glasscock (“Glasscock”). (Doc. 38). 
 The Plaintiff, Allison Smith (“Smith”), originally filed a complaint in this case on 
October 9, 2018, bringing claims against the Chilton County Board of Education, 
Glasscock, and Chilton County Board of Education members Lori Patterson, Linda Hand, 
Joe Mims, Keith Moore, Pam Price, James Shannon, and Curtis Smith. (Doc. 1). The 
parties subsequently filed a Joint Stipulation of Pro Tanto Dismissal as to the claims against 
the Chilton County Board of Education, Lori Patterson, Linda Hand, Joe Mims, Keith 
Moore, Pam Price, James Shannon, and Curtis Smith. (Doc. 36). The only Defendant 
remaining after dismissal, Glasscock, filed the motion for summary judgment which is 
currently pending. 
 Upon consideration of the briefs and applicable law, and for the reasons that follow, 
the motion for summary judgment is due to be GRANTED in part and DENIED in part. 
 I. JURISDICTION 

 The Court exercises subject matter jurisdiction over this dispute pursuant to 28 
U.S.C. §§ 1331, 1343, and 1367. Personal jurisdiction and venue are uncontested. 
 II. LEGAL STANDARD 
 “Summary judgment is proper if the evidence shows ‘that there is no genuine 
dispute as to any material fact and the movant is entitled to judgment as a matter of law.’” 

Hornsby-Culpepper v. Ware, 906 F.3d 1302, 1311 (11th Cir. 2018) (quoting FED.R.CIV.P. 
56(a)). “[A] court generally must view all evidence and make all reasonable inferences in 
favor of the party opposing summary judgment.” Fla. Int’l Univ. Bd. of Trs. v. Fla. Nat’l 
Univ., Inc., 830 F.3d 1242, 1252 (11th Cir. 2016). However, “conclusory allegations 
without specific supporting facts have no probative value.” Jefferson v. Sewon Am., Inc., 

891 F.3d 911, 924–25 (11th Cir. 2018). If the record, taken as a whole, “could not lead a 
rational trier of fact to find for the non-moving party,” then there is no genuine dispute as 
to any material fact. Hornsby-Culpepper, 906 F.3d at 1311 (citing Matsushita Elec. Indus. 
Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). 
 The movant bears the initial burden of demonstrating that there is no genuine dispute 

as to any material fact, and the movant must identify the portions of the record which 
support this proposition. Id. (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). 
The movant may carry this burden “by demonstrating that the nonmoving party has failed 
to present sufficient evidence to support an essential element of the case.” Id. The burden 
then shifts to the non-moving party to establish, by going beyond the pleadings, that a 
genuine issue of material fact exists. Id. at 1311–12. 
 III. FACTS 

 The facts, viewed in a light most favorable to the non-movant, are as follows:
 Smith was employed by the Chilton County Board of Education from February 2015 
to April 2017. She began as a secretary to Glasscock, the Superintendent of the Chilton 

County Board of Education. In his position, Glasscock made recommendations regarding 
personnel actions to the Board of Education. 
 In June 2016, Chilton County Board of Education Personnel Director Walter Fenn 
resigned. Smith has testified that although her pay did not change, she began performing 
the job duties of the Personnel Director/Assistant Superintendent. (Doc. 39-1 at 185: 11-

21). Smith requested a raise and requested overtime pay and her requests were denied by 
Glasscock. 
 In addition to her claims regarding pay and overtime, Smith provides evidence to 
support claims based on her working environment.1 Smith states in her declaration that 
Glasscock gave her hugs, which were a “full frontal, tight embrace, face to face, that would 

last 5-10 seconds,” that had sexual overtones, and that deeply offended and embarrassed 
her. (Doc. 42-1 at ¶¶36- 40). She testifies in her deposition that during the time she worked 
there Glasscock hugged her three or four times. (Doc. 39-1 at 119: 7-14). The last time 

1 The Court recognizes that Glasscock denies that this conduct occurred. Smith’s evidence, 
however, is sufficient to create a question of fact as to whether the conduct occurred, so the Court 
will consider Smith’s version of the events which is supported by evidence in ruling on the motion 
for summary judgment. See Jefferson, 891 F.3d at 924–25. 
that Glasscock tried to hug Smith, he said that he loved her, and Smith pushed him away 
as he tried forcefully to pull her in. (Doc. 42-1 at ¶¶43, 44). 
 Smith has testified in a deposition that Glasscock made various comments which 

she characterizes as being of a sexual nature. Smith states in a declaration that Glasscock 
said that he would give her a raise but that first she had to “meet his needs.” (Doc. 42-1 at 
¶25). She states that she rebuffed Glasscock’s sexual advances. (Doc. 42-1 at ¶26). Smith 
states that Glasscock called her into his office and told her she was one of the few people 
in his life that he felt this way about and would protect her, but she had to meet his needs. 

(Doc. 39-1 at 74: 2-19). She states that she understood this to be a sexual proposition and 
says that it was made in an aggressive and angry way. (Doc. 39-1 at 75: 1-13). She also 
states that Glasscock told her he felt like they were getting a divorce and that he did not 
“need to fuck you.” (Doc. 39-1 at 93:15-17). Smith testifies in her deposition that 
Glasscock asked her to get on her hands and knees under his desk to change out the paper 

in her printer and commented on what it looked like with her being under the table. (Doc. 
39-1 at 189: 9-20). Glasscock also told Smith that other employees were jealous of them 
and their relationship. (Doc. 42-2 at 108). Smith states that Glasscock said he wanted to 
show her children’s teachers “who [Smith] belonged to.” (Doc. 42-2 at 107). 
 Smith also provides evidence of comments or conduct by Glasscock regarding other 

people and employees. She states that Glasscock stood in her office and told Smith that 
another female employee was “just embarrassed because she had tried to give him a blow 
job at some point.” (Doc. 39-1 at 42: 1-13). Smith also states that Glasscock stood in her 
office and discussed a sexual relationship he had had with a friend of Smith’s and the 
friend’s mother. (Doc. 39-1 at 60: 3-18). Glasscock also referred to a female subordinate 
who gave him a “peep show” and told Smith that a Board member wore no panties. Smith 
provides evidence that Glasscock came into Smith’s office to point out women vendors 

who were getting out of their cars because he liked their short skirts or low-cut blouses. 
(Doc. 39-1 at 64: 22- 65: 18). Smith states that Glasscock came into her office and showed 
her a video of a male monkey engaged in a sexual act. (Doc. 39-1 at 67: 20-68: 5). 
According to Smith’s testimony, Glasscock also made suggestive comments about a 
student. (Doc. 42-2 at 109). Glasscock also told Smith about sexual relationships of a 

previous Superintendent. (Doc. 4-2 at 107). Smith further testifies to conduct by 
Glasscock including telling her about an employee who wanted to have sex with him and 
that he showed her a text message from an employee about her breasts. (Doc. 39-2 at 234:6-
236:8). 
 Smith also provides evidence of aggressive or angry behavior by Glasscock which 

she claims contributed to a hostile working environment. She states that in the summer of 
2016 he moved her from the front office to the back office where it was more private and 
that he began yelling at her more. (Doc. 39-1 at 189: 21-190: 11). Smith also states that 
Glasscock made her cry and she witnessed Glasscock make a Board member and other 
women cry. (Doc. 42-1 ¶¶49, 50). She states that Glasscock got angry with her over who 

cut her hair. (Doc. 42-2 at 108). 
 Ultimately, Smith states, Glasscock forced Smith to resign or be fired and told her 
that if she said a word about his conduct, he would see to it that she never worked in Chilton 
County again. (Doc. 42-1 at ¶54). 
 IV. DISCUSSION 
 Glasscock has moved for summary judgment as to the federal and state law claims 
against him. The Court begins with the federal claims. 

 A. Federal Claims 
 1. Equal Pay Act and Fair Labor Standards Act 
 Glasscock moves for summary judgment as to the claims under both the Equal Pay 
Act (“EPA”) and Fair Labor Standards Act (“FLSA”) on the same grounds; namely, that a 
claim cannot be stated against a public official in his individual capacity under those 

statutes and that there is no claim remaining in this case under either statute against 
Glasscock in his official capacity. 
 With respect to the individual-capacity claims, the law in the Eleventh Circuit is 
settled. The Eleventh Circuit has clearly held that precedent “establishes as the law of this 
circuit that a public official sued in his individual capacity is not an ‘employer’ subject to 

individual liability under the FLSA,” and that the “Equal Pay Act is simply an extension 
of the FLSA and incorporates the FLSA’s definition of ‘employer.’” Wascura v. Carver, 
169 F.3d 683, 686 (11th Cir. 1999) (citing Welch v. Laney, 57 F.3d 1004, 1011 (11th Cir. 
1995)). 
 Smith contends that Welch and Wascura were wrong decided, citing Hafer v. Melo, 

502 U.S. 21 (1991). (Doc. 42 at 38). Hafer, however, is a case decided before Welch and 
Wascura. See Evans v. Georgia Reg'l Hosp., 850 F.3d 1248, 1255 (11th Cir. 2017) (stating 
that the Eleventh Circuit is “bound to follow a binding precedent in this Circuit unless and 
until it is overruled by this court en banc or by the Supreme Court.”). Under binding 
Eleventh Circuit precedent, therefore, Glasscock in his individual capacity is not subject to 
suit under the EPA or FLSA and summary judgment is due to be GRANTED as to those 
claims against Glasscock. See Lee v. City of Walthourville, 2019 WL 339631, at *3 (S.D. 

Ga. 2019)(finding that Eleventh Circuit precedent is binding that a public official in his 
individual capacity is not an employer under the FLSA). 
 With regard to the official-capacity claims, Glasscock contends that because a claim 
against him in his official capacity is the same thing as a claim against the Board of 
Education, and because Smith released her claims against the Board of Education, there is 

no official capacity claim remaining against Glasscock. Smith responds that the release of 
the claims against the Board of Education did not include claims against Glasscock and, 
therefore, she can proceed against Glasscock on claims brought pursuant to the FLSA and 
EPA. Smith argues that courts generally do not to allow claims to go forward against an 
entity as well as an official in an official capacity because that would be potentially 

confusing to a jury, but argues that this case is distinct because the entity is no longer a 
party in the case. 
 An official capacity claim is the same thing as a claim brought directly against the 
governmental entity. See Kentucky v. Graham, 473 U.S. 159, 166 (1985). That is “a suit 
against a state official in his or her official capacity is not a suit against the official but 

rather is a suit against the official's office.” Will v. Michigan Dep't of State Police, 491 U.S. 
58, 71 (1989). In this case, the claims against the entity, which are the same as the claims 
against the official in his official capacity, Will, 491 U.S. at 71, have been settled and 
released. The claims against Glasscock in his official capacity, therefore, are no longer a 
part of this case. Furthermore, it is undisputed that Glasscock stopped being the 
Superintendent of the Chilton County Board of Education and was hired by the State 
Department of Education in August, 2018. (Doc. 39 at 2 & Doc. 39-2 at 19: 11-17). There 

is no authority for enjoining a former state official. See Spurrier v. Bd. of Trustees of the 
Univ. of Alabama, 2016 WL 4137971, at *5 (N.D. Ala. Aug. 4, 2016). Accordingly, the 
Motion for Summary Judgment is due to be GRANTED as to the EPA and FLSA claims 
against Glasscock in his official capacity. 
 2. Equal Protection 

 In count VI of the complaint, Smith brings a §1983 claim for denial of equal 
protection against Glasscock. Glasscock moves for summary judgment on this claim on 
the ground that Glasscock’s actions were taken as a private individual and were not state 
actions, so there can be no violation of Equal Protection by a state actor. Glasscock argues 
that Smith has not shown that conduct by Glasscock was in any way dependent upon or 

furthered by state authority and that even though he was her supervisor, the acts she says 
he committed were not different than harassment in a private business. Glasscock further 
argues that he was acting outside of any discretionary authority given him by state law or 
Chilton County Board of Education policy. 
 Smith responds that Glasscock had supervisory authority over her and that this case 

is to be distinguished from cases relied on by Glasscock wherein harassment was 
perpetrated by co-workers without supervisory authority. Smith states in her declaration 
that Glasscock promised to give her a raise, but said that first she would have to meet his 
needs. (Doc. 42-1 at ¶25). She states that she was “afraid to tell Glasscock no” for fear of 
losing her job. (Doc. 42-1 at ¶42). She also testifies in her deposition that Glasscock called 
her into his office and told her that she was one of the “few people in his life that he felt 
this way about and that he would protect [her], but [she] would have to meet his needs,” 

which she described as said in an aggressive, angry way and which she perceived as a 
sexual demand. (Doc. 39-1 at 74: 2-75:13). Smith also states that Glasscock told her she 
had to resign and that if she reported his conduct, she would never work in Chilton County 
again. (Doc. 42-1 at ¶54). Smith states that Glasscock gave her unwanted hugs in the 
workplace that deeply offended and embarrassed her. (Doc. 42-1 at ¶¶36, 37). Smith 

further testifies in her deposition about incidents which took place in her office, such as a 
time when vendors came to the office to talk about services, Glasscock showed Smith their 
short skirts or low-cut blouses. (Doc. 39-1 at 65: 1-16). At one point, she requested that 
Glasscock move her to a different position, and she was offended when he said he felt “like 
we are getting a divorce. I don’t need to fuck you.” (Doc. 39-1 at 93: 12-17). She further 

testified that objectionable conduct occurred more often after Glasscock moved her from 
the front office to the back office where it was more private. (Doc. 39-1 at 190: 5-11). 
 “The traditional definition of acting under color of state law requires that the 
defendant in a [section] 1983 action have exercised power possessed by virtue of state law 
and made possible only because the wrongdoer is clothed with the authority of state law.” 

Myers v. Bowman, 713 F.3d 1319, 1329 (11th Cir. 2013) (quotation omitted). The Eleventh 
Circuit has cautioned that whether a government employee is acting under color of law 
requires that courts engage in line drawing. See Griffin v. City of Opa-Locka, 261 F.3d 
1295 (11th Cir. 2001). “The dispositive issue is whether the official was acting pursuant 
to the power he/she possessed by state authority or acting only as a private individual.” 
Myers, 713 F.3d at 1330 (citing Griffin, 261 F.3d 1303). A §1983 defendant who abuses 
the power and authority given to her by the state acts under color of state law. Butler v. 

Sheriff of Palm Beach Cty., 685 F.3d 1261, 1268 (11th Cir. 2012). 
 In Griffin, the Eleventh Circuit examined the facts surrounding a sexual assault of 
an employee in evaluating whether her supervisor, a state employee, acted under color of 
state law. 261 F.3d at 1305 (holding “Neal's official interactions with Griffin as her boss 
during and after work hours, his continual sexual harassment of her during those 

interactions, and the ultimate sexual assault constitute an indivisible, ongoing series of 
events”). The court found it significant that the defendant utilized his authority as City 
Manager to harass and intimidate the plaintiff at the workplace by insisting she owed him 
something for “all of the things” that he did for her, including giving her a raise; by 
threatening her with her job if she did not do certain things for him; by touching her 

inappropriately and continually requesting hugs; and by asking her intimate questions. Id. 
The court concluded that it was within that context of “continual exploitation of and 
leverage of his authority over Griffin that we find a sufficient nexus between his duties and 
obligations as City Manager and Griffin's boss and the abuse of that authority to facilitate 
his harassment and ultimate sexual assault of her.” Id. The court explained that this was 

not a situation in which the performance of the state official’s duties merely facilitated the 
meeting of or development of a relationship, but rather a situation in which the official used 
his authority as the employee’s boss to harass and humiliate her during and after work 
hours. Id. at 1307. While Griffin is distinct from this case in that it involved a sexual assault 
outside of the workplace, the analysis applies in this case because the Eleventh Circuit 
examined conduct within the workplace and concluded that the assault outside of the 
workplace was a continuation of action under color of state law in the workplace. Id. at 

1306. 
 In this case, although Glasscock disputes Smith’s evidence as to his conduct, 
creating a question of fact as to that conduct, Smith’s evidence supports a finding that her 
supervisor, Glasscock, engaged in conduct very similar to the conduct in Griffin, and 
thereby used his authority under state law to facilitate his harassment of Smith by telling 

Smith he would help her with a raise and would protect her if she met his needs; threatening 
her with her job if she complained; exerting control over placement of her desk which she 
states allowed him to increase his angry behavior; touching her in an unwanted manner by 
hugging her; and making inappropriate suggestive remarks. This Court concludes, based 
on Smith’s evidence viewed in a light most favorable to the non-movant, that this is not a 

situation in which Glasscock merely used his position to facilitate a meeting or 
development of a relationship, but instead there is sufficient evidence to support a finding 
that Glasscock abused the authority given to him by the State to harass Smith. See Butler, 
685 F.3d at 1268; Griffin, 261 F.3d at 1306. Because the state-actor argument is the only 
basis for summary judgment advanced by Glasscock as to the Equal Protection claim, the 

motion for summary judgment is due to be DENIED as to the claim for violation of Equal 
Protection against Glasscock in his individual capacity. 
 B. State Law Claims 
 1. Breach of Contract, Quantum Meruit, Unjust Enrichment 
 In count VII of the complaint, Smith brings one count asserting three related claims: 

breach of contract, quantum meruit, and unjust enrichment. In her brief, Smith states that 
Glasscock, as Superintendent and Chief Executive Officer of the Chilton County Board of 
Education, “breached Smith’s employment contract with the Board.” (Doc. 42 at 43). In 
another part of her argument, Smith states that Glasscock’s assertions that he was not 
Smith’s employer are unsupported factually and under the law. (Doc. 42 at 45). Therefore, 

it is clear that she is not proceeding under a tortious interference theory, but instead 
contends that Glasscock, as Superintendent, was a party to the contractual relationship 
and/or owed compensation to Smith under her related theories. 
 Under Alabama law, a superintendent only makes recommendations to a board of 
education regarding personnel matters. Ala. Code §16-8-23 (“a county board of education 

appoints, upon recommendation of the superintendent, all principals, teachers, clerical, and 
professional assistants.”). In Board of Sch. Comm'rs of Mobile Cty. v. Weaver, 99 So. 3d 
1210, 1221 (Ala. 2012), a plaintiff sought reinstatement to a position with a board of 
education and named the board and the superintendent as defendants. The court explained 
that the superintendent did not have the authority under Ala. Code §16-8-23 to grant the 

relief the plaintiff requested. Id. Furthermore, “agents cannot be held liable for a principal's 
breach of contract.” Harrell v. Reynolds Metals Co., 495 So. 2d 1381, 1389 (Ala. 1986). 
 Under Alabama law, therefore, Glasscock does not have the authority to give Smith 
the relief she seeks. In addition, as earlier noted, her federal and state claims against the 
Board of Education and the Board members have been settled and Smith has released all 
claims against the Board, which includes claims against Glasscock in his official capacity. 
Finally, even if Glasscock had the authority, he is no longer the Superintendent, and so is 

not in a position to enforce a contract or provide equitable relief on behalf of the Board of 
Education. Accordingly, summary judgment is due to be GRANTED as to Glasscock on 
the breach of contract, quantum meruit, and unjust enrichment claims against him in his 
official capacity. 
 It does not appear that Smith contends that Glasscock individually had a contractual 

relationship with her or personally owed her money under a quantum meruit or unjustment 
enrichment theory. To the extent that Smith brings individual-capacity claims against 
Glasscock in count VII, however, Glasscock argues that he is entitled to summary judgment 
on the breach of contract, quantum claims, and unjust enrichment claims because he had 
no contractual relationship with Smith, and any claim arising from any contractual 

relationship or the withholding of compensation would be against her employer, the Board 
of Education. 
 The Court agrees that there is no evidence of a benefit to Glasscock individually. 
Under state law, the employment contracts are between employees and the boards of 
education, not the superintendent. See Ala. Code §16-8-23. Similarly, unjust enrichment 

and quantum meruit are equitable remedies arising from a contractual relationship. See 
American Family Care, Inc. v. Fox, 642 So.2d 486, 488 (Ala.Civ.App.1994) (“Under the 
doctrine of quasi-contract, the law implies a contract, based upon the principles of equity, 
to prevent the unjust enrichment of one who knowingly accepts and retains a benefit 
provided at the detriment of another. . .”). To the extent that count VII of the complaint is 
brought against Glasscock in his individual capacity, therefore, summary judgment is due 
to be GRANTED. 

 2. Invasion of Privacy 
 In Alabama, “the invasion of privacy tort consists of four distinct wrongs: 1) the 
intrusion upon the plaintiff's physical solitude or seclusion; 2) publicity which violates 
ordinary decencies; 3) putting the plaintiff in a false, but not necessarily defamatory, 
position in the public eye; and 4) the appropriation of some element of the plaintiff's 

personality for a commercial use.” Phillips v. Smalley Maintenance Services, Inc., 435 
So.2d 705, 708 (Ala.1983). Smith relies on a theory of intrusion upon the plaintiff’s 
physical solitude or seclusion. 
 To succeed on a claim of intrusion upon seclusion “relating to sexual harassment, a 
plaintiff must show: (1) that the matters intruded into are of a private nature; and (2) that 

the intrusion would be so offensive or objectionable that a reasonable person subjected to 
it would experience outrage, mental suffering, shame, or humiliation.” Ex parte Atmore, 
719 So.2d 1190, 1194 (Ala.1998). “While conduct needed to support an invasion of 
privacy claim need not be ‘extreme and outrageous,’ in cases where a viable claim for 
invasion of privacy exists, the defendant's behavior frequently approaches such a degree.” 

Brassfield v. Jack McLendon Furniture, Inc., 953 F. Supp. 1438, 1456 (M.D. Ala. 1996). 
 Glasscock moves for summary judgment on the invasion of privacy claim arguing 
that Smith’s testimony that Glasscock made comments to her about other women, not 
Smith herself; made comments that were not overtly of a sexual nature but which Smith 
perceived as sexually suggestive; and hugged her on three or four occasions, cannot support 
a claim of invasion of privacy because the conduct does not rise to the level of proof 
required to present a triable issue. 

 To sustain a wrongful-intrusion claim, “‘[t]here must be something in the nature of 
prying and intrusion,’ . . . even if the intrusion is only into one's ‘emotional sanctum.’” 
Thornton v. Flavor House Prod., Inc., 2008 WL 5328492, at *16 (M.D. Ala. 2008) 
(citations omitted). For example, an invasion may be a physical intrusion if a defendant 
forces himself into the plaintiff’s room, listens in on private affairs, or investigates or 

examines private concerns. See McIsaac v. WZEW-FM Corp., 495 So. 2d 649, 652 (Ala. 
1986). Consequently, this Court is persuaded that only the instances of conduct which are 
considered intrusive should be considered in evaluating an invasion of privacy claim. 
Thornton, 2008 WL 5328492, at *16. Conduct about the speaker’s own personal life are 
not intrusive and should not be considered part of the claim. Id. 

 In this case, there is evidence of comments about Smith needing to meet Glasscock’s 
needs which may be considered as intruding on the emotional sanctum. But these sexual 
propositions are not sufficiently intrusive under Alabama law where “the dire affront of 
inviting an unwilling woman to illicit intercourse has been held by most courts to be no 
such outrage as to lead to liability.” McIsaac, 495 So. 2d at 652 (citation omitted). Even 

when the arguably sexual propositions are combined with evidence of comments about the 
relationship between Smith and Glasscock and the evidence of hugs, only the last of which 
was resisted by Smith, the Court cannot conclude that the evidence in this case falls within 
the conduct which has been recognized under Alabama law as “sufficient to cause outrage, 
mental suffering, shame or humiliation to a person of ordinary sensibilities.” Thornton, 
2008 WL 5328492, at *17. Summary judgment is, therefore, due to be granted as to the 
invasion of privacy claim. 

 3. Assault and Battery 
 “The plaintiff in an action alleging assault and battery must prove ‘(1) that the 
defendant touched the plaintiff; (2) that the defendant intended to touch the plaintiff; and 
(3) that the touching was conducted in a harmful or offensive manner.’ ” Harper v. Winston 
Cty, 892 So.2d 346, 353 (Ala. 2004) (citation omitted). It is well-established that “[a]n 

actual injury to the body is not a necessary element of a civil assault and battery.” Surrency 
v. Harbison, 489 So.2d 1097, 1104 (Ala.1986). 
 Glasscock moves for summary judgment relying on Murdoch v. Medjet Assistance, 
294 F. Supp. 3d 1276-77 (N.D. Ala. 2018), in which the court granted summary judgment 
to the defendant on an assault claim where there was no evidence that that the plaintiff 

“verbally objected to Mr. Berger's touchings when they occurred (or shortly thereafter)” or 
any “evidence of a touching that had substantial sexual overtones.” Glasscock cites to 
Smith’s deposition and argues that because there were no sexual comments during the hugs 
and because she hugged Glasscock back, there is no evidence of assault. 
 The Court has reviewed the portion of Smith’s deposition in which she discusses 

the hugs, as indicated by Glasscock’s citation to a page within that discussion. Smith 
testified that Glasscock hugged her and she “hugged him back, except for the last time.” 
(Doc. 39-1 at 118: 1-2). Smith also testified that the last time Glasscock hugged her, he 
told her that he loved her (doc. 39-1 at 118: 6-9) and she pushed away as he tried to 
forcefully pull her in. (Doc. 39-1 at 123: 14-18) (Doc. 42-1 at ¶44). Smith also testified 
that she may have reported Glasscock’s hugs to a person named Ms. White and to Allie 
Ellison. (Doc. 39-1 at 122: 18-22). The facts in this case, therefore, are distinct from those 

in Murdoch. 
 In Ex parte Atmore Community Hosp., 719 So.2d 1190, 1194 (Ala.1998), the court 
reversed summary judgment to the defendant on a claim of battery where the plaintiff 
“presented evidence indicating that [defendant] touched her waist, rubbed against her when 
passing her in the hall, poked her in the armpits near the breast area, and touched her leg.” 

The plaintiff “also presented evidence indicating that each of these touchings was 
intentional, was conducted with sexual overtones, and was unwelcome.” Id. 
 In this case even if there is no evidence that the first hugs were unwanted, there is 
evidence that the final hug was unwanted and that Smith pushed away, and there is 
evidence which could tend to show that there was a sexual overtone in that Glasscock said 

that he loved Smith during that hug. Accordingly, there is sufficient evidence to create a 
triable issue as to assault and battery and summary judgment will be DENIED as to that 
claim against Glasscock in his individual capacity. 
 4. Intentional Infliction of Emotional Distress 
 To provide an intentional infliction of emotional distress, a plaintiff must establish 

that, “(1) the defendant ... intended to inflict emotional distress, or should have known that 
his or her acts would result in emotional distress; (2) the act [was] extreme and outrageous; 
(3) the act ... caused plaintiff['s] distress; and (4) plaintiff ['s] emotional distress [was] so 
severe that no reasonable person could be expected to endure it.” K.M. v. Ala. Dep't of 
Youth Servs., 360 F.Supp.2d 1253, 1259 (M.D. Ala. 2005) (citing Harrelson v. R.J., 882 
So.2d 317, 322 (Ala.2003)). The tort does not recognize recovery for “mere insults, 
indignities, threats, annoyances, petty oppressions, or other trivialities.” Wilborn, 720 F. 

Supp. 2d at 1311–12 (citation omitted). 
 Alabama caselaw has recognized three categories of an outrageous conduct claim: 
1) cases having to do with wrongful conduct in the context of family burials, 2) heavy-
handed insurance settlements, and 3) egregious sexual harassment. Potts v. Hayes, 771 
So.2d 462, 465 (Ala. 2000). The Alabama Supreme Court has clarified that the tort is not 

limited to those three categories, but has also reiterated that the conduct must be “so 
extreme in degree as to go beyond all possible bounds of decency and be regarded as 
atrocious and utterly intolerable in a civilized society.” Wilson v. Univ. of Alabama Health 
Servs. Found., P.C., 266 So. 3d 674, 677 (Ala. 2017). 
 In her brief, Smith argues that because Glasscock had the responsibility to 

implement federal laws prohibiting discrimination and harassment, Glasscock’s 
outrageous discrimination was in contravention of public policy, which is considered by 
Alabama courts in evaluating intentional infliction of emotional distress claims. In support 
of her argument she cites Powell v. Harsco Metal, 2013 WL 3242759, at *9 (N.D. Ala. 
2013), which in turn relies on Lees v. Sea Breeze Health Care Ctr., 391 F. Supp. 2d 1103, 

1108 (S.D. Ala 2005). 
 In Lees, the court explained that under Alabama law, an employer cannot treat an 
employee in an extreme and outrageous manner, but to constitute a tort, the outrageous 
conduct must exceed merely discharging an employee at will and the termination must 
contravene public policy. Id. at 1107. The court pointed to Alabama cases recognizing a 
contravention of public policy when a plaintiff was retaliated against for exercising the 
right to marry and when a plaintiff was terminated because of pregnancy. Id. In Lees, the 

plaintiff claimed that he was harassed on the basis of his having enlisted in the U.S. Air 
Force Reserves, which the court found was in contravention of public policy. Id. 
 This Court need not address the scope of an outrageous conduct theory based on the 
contravention of public policy as applied in this case, because the conduct in this case is 
distinct from that discussed in Lees and actually, if sufficient to meet the standard, falls 

within a category of conduct which has been recognized; namely, egregious sexual 
harassment.2 See Powell v. Harsco Metal, 2013 WL 3242759, at *10 (N.D. Ala. 2013) 
(finding that no claim was stated where the allegations were not allegations of conduct 
which was “extreme and outrageous,” “like those which have been recognized in Alabama 
in the past” and there was no allegation of conduct which contravenes public policy); see 

also Shumate v. Selma City Bd. of Educ., 928 F. Supp. 2d 1302, 1330 (S.D. Ala. 2013) 
(distinguishing Lees and granting summary judgment where the facts do not fit the limited 
categories of outrage previously enumerated), on reconsideration in part, 2013 WL 
5758699 (S.D. Ala. Oct. 24, 2013), aff'd, 581 F. App'x 740 (11th Cir. 2014). In other 
words, this Court need not analyze this case under a separate public-policy category 

because the Alabama Supreme Court already has established a standard for evaluating 

2 The basis for Smith’s argument that Glasscock engaged in gender discrimination in 
contravention of public policy is unclear, but appears to arise from her Equal Protection violation 
theory, which is premised on sexual harassment. 
outrageous conduct in the context presented in this case: egregious sexual harassment. See 
Potts, 771 So.2d at 465; See also McCreight v. AuburnBank, 2020 WL 1061675, at *2 
(M.D. Ala. 2020) (declining an extension of the tort of outrageous conduct to a termination 

which is a violation of public policy.) 
 The question before this Court, therefore, is whether Smith has created a genuine 
issue of fact as to whether Glasscock engaged in egregious sexual harassment. 
 Considering all of the evidence presented in a light most favorable to Smith, the 
evidence directly involving Smith includes physical touching in the form of three or four 

hugs, only one of which was resisted; comments that Smith would have to meet 
Glasscock’s needs; comments about what other people would think about her being under 
Glasscock’s desk; comments about what people thought of their relationship; and a 
comment that Glasscock wanted teachers to know who Smith belonged to. Other evidence 
of Glasscock’s behavior relates to others, such comments on other women’s appearance, 

descriptions of sexual activity by Glasscock and other employees, a graphic video, and a 
text about another woman’s breasts. 
 Conduct similar to the conduct in this case has been found not to meet the standard 
of egregious sexual harassment. See., e.g., Turner v. Hayes, 719 So. 2d 1184, 1187 
(Ala.Civ.App.1997)(woman who claimed her supervisor sexually harassed her by touching 

her under the armpits, near her breasts, on her leg, trying to look up her skirt, making sexual 
innuendo, and touching his genital area in her presence, had not stated facts so “flagrantly 
egregious” as to state a claim for outrage), rev'd on other grounds Ex parte Atmore Cmty. 
Hosp., 719 So. 2d 1190 (Ala. 1998); Stancombe v. New Process Steel LP, 652 F. App'x 
729, 739 (11th Cir. 2016) (analyzing an Alabama case holding that no extreme or 
outrageous conduct occurred where the defendant-supervisor stated that he wanted to have 
an affair with the plaintiff, attempted to kiss her, made suggestive remarks, touched her 

and put his arm around her, and then terminated her employment because she had refused 
his advances); McIsaac, 495 So. 2d at 650-51 (no liability for outrageous conduct where 
employer told plaintiff about his affair, asked the employee to be available, tried to kiss 
her, looked at her in an inappropriate manner, touched her arm, and tried to fire her for 
refusing his advances). The conduct in this case does not rise to the level of extreme and 

outrageous conduct so extreme in degree as to go beyond all possible bounds of decency 
and be regarded as atrocious and utterly intolerable in a civilized society. See Wilson, 266 
So. at 677. Accordingly, summary judgment is due to be GRANTED as to Glasscock on 
the outrageous conduct claim. 
 V. CONCLUSION 

 For the reasons discussed, it is hereby ORDERED as follows: 
 A. The motion for summary judgment (doc. 38) is GRANTED in part and DENIED 
in part as follows: 
 1. The Motion is GRANTED and judgment is entered in favor of Defendant 
Glasscock in his official and individual capacities against Plaintiff Smith on the federal 

FLSA and EPA claims and the state law breach of contract, quantum meruit, unjust 
enrichment, invasion of privacy, and outrage claims, and against Glasscock in his official 
capacity for violation of Equal Protection and the state law claim of assault and battery. 
 2. The Motion is DENIED as to the federal claim against Glasscock in his individual 
capacity for violation of Equal Protection on the basis of sexual harassment and as to the 
state-law claim against Glasscock in his individual capacity on the claim of assault and 

battery. 
 B. The Court having ruled on the Motion for Summary Judgment, the parties Joint 
Motion to Stay Scheduling Order Deadlines (doc. 47) is DENIED without prejudice to 
being refiled if the parties need an extension of time for some deadlines for a different 
reason. 

 Done this 8th day of May, 2020. 

 /s/ Emily C. Marks 
 EMILY C. MARKS 
 CHIEF UNITED STATES DISTRICT JUDGE